## THE UNITED STATES *v.* AMBROSE.[*]

### (*Circuit Court, S. D. Ohio.* May, 1880.)

1. FEDERAL JURY ACT OF JUNE 30, 1879—CONSTRUCTION.—The provisions of the second section of the act of congress of June 30, 1879, (first session, forty-sixth congress, c. 52,) prescribing the mode in which jurors in the federal courts shall be drawn, is mandatory; with this qualification, however: that an honest intention to conform to the statute and carry out its provisions in good faith is all that is required.

2. SAME—SAME—GRAND JURY—FAILURE TO PUT NAME IN BOX.—Where a grand jury was drawn under the provisions of this act, and the name of one of the jurors who assisted in finding the indictment was not put into the box by any competent authority, nor drawn from it, and there was no imputation that such name appeared in the *venire* through bad faith, *held*, to be a mere irregularity, which would not vitiate the action of the grand jury.

Upon demurrer to plea in abatement. The defendant was indicted for presenting a false claim against the government. To the indictment he filed a plea in abatement, setting forth the following grounds why it should be quashed: (1.) The *venire* for the grand jurors was issued from the circuit court, whereas the application for the same was addressed to the judge of another court having jurisdiction thereof. (2.) The order of the circuit court directing the *venire* to issue recites that such order was made upon the application of the district attorney, when in truth no such application was made to said circuit court. (3.) The box from which the names of said grand jurors were drawn did not contain, at the time of said

[*]Reported by Messrs. Florien Giauque and J. C. Harper, of the Cincinnati Bar.

drawing, the names of not less than 300 persons possessing the qualifications of jurors as prescribed by law. (4.) All of said grand jurors, so drawn as aforesaid, were not persons possessing the qualifications of jurors as prescribed by law. (5.) William C. Stevenson, drawn as one of said grand jurors, was not a person having the qualifications of an elector and citizen of the southern district of Ohio, having deceased before the said drawing. (6.) Because the said *venire* was not issued and signed by the clerk of said court, as required by law and the order of said court, and that his pretended attestation of the same is not his official act, but was done by some one other than said clerk, and the signature of his name is not genuine. (7.) All of said grand jury, so drawn as aforesaid, were not served by the marshal or his deputy, as prescribed by law. (8.) The return of the marshal indorsed upon said *venire*, that personal service had been made on all of the "within-named grand jurors," (meaning the names entered in the body of said *venire*,) is not true. (9.) William C. Stevenson, one of the grand jurors so returned by the marshal as "personally served," had deceased before the issuing of said *venire*. (10.) The said grand jurors were not returned so as to be most favorable to an impartial trial, as required by law. (11.) Said grand jurors were not drawn from the body of said district, but were drawn solely from counties near the place of holding said court, to the prejudice of the defendant. (12.) The prosecution of said defendant by said grand jurors was not commenced and prosecuted as if the act of February 4, 1880, dividing the southern district of Ohio into two divisions, had not been passed, as required by the terms of said act. (13.) William Risinger, who acted as one of said grand jurors, was not competent to act as such, his name not having been drawn from the box, as required by law, and being thus incompetent did participate in the deliberations of said grand jury contrary to law.

To this plea the district attorney filed a general demurrer.

*Channing Richards,* United States District Attorney, for plaintiff.

*Hoadly, Johnson & Colston,* for defendant.

SWAYNE, C. J.   It is proper to remark that the authorities upon the general subject as to how far an indicted party may go behind the indictment, as regards the action of the grand jury, or the questions he may raise, or the objections he may make, or what objections, if sustained, are fatal, or what are otherwise, are in utter confusion upon the subject.*

I have examined a great number of them, and undoubtedly it may be said that they are in a state of thorough conflict. In a large number of well-considered adjudicated cases it is held that the same principles are to be applied.   In this aspect of the subject, (*i. e.*, to the finding of the indictment,) rules of the same strictness are applied as to the indictment itself—that everything relating to the subject is to be considered with the microscopic eye of the special demurrer.   On the other hand, the authorities are equally numerous, and perhaps equally weighty, as to the sources from whence they come, to the effect that if there is a defective grand jury, and the indictment is found by such grand jury, all inquiry is shut out, and the party must go to trial, if the indictment itself be properly framed.   The case of the *United States* v. *Reed*, 12 How. 361, lays down the proposition, and maintains it unanswerably, that, as regards all criminal proceedings and jurisprudence in the courts of the United States, the courts of the United States are in no wise bound by state laws or state practice in anything.   The particular point, however, under consideration and decided in that case, was that the rules of evidence did not apply, and are to be disregarded by the courts of the United States; *i. e.*, the rules laid down by the state authorities.

It is provided, by the act of congress under which this grand jury was sworn, that certain proceedings were to be had touching the summoning of the grand jury.   It is expressly provided by the act of congress that the clerk, and a gentleman of different politics and established character, etc., should put into the box certain names, and that there should be

*The authorities are collected in 1 Wharton's Am. Crim. Law, §§ 468 and 472, *et seq.*—[REP.

drawn therefrom, in a certain manner, a certain number to compose the grand jury.

Upon full consideration of the subject I feel bound to hold that this provision of this act of congress was not directory, as I was inclined to think at first; and I think no sound view of the subject will warrant any other conclusion than that that provision is mandatory, and I think it is the duty of every court of the United States to regard it and carry it out. But with this qualification, which leads me to say that, as regards the general subject to which I have adverted, and the authorities in relation to which I remarked upon, my conclusion that that statute is mandatory, and must be obeyed as to the substantial provisions in summoning the grand jurors, as well as the petit jurors, and that they be drawn in conformance to its requirements, I think the *venire* must be issued in conformity to its requirements; I think the jurors drawn, whose names are put into the box, and who are selected and summoned to serve on the grand jury, must have the qualifications prescribed by law. But, on the other hand, I hold that the principles of a special demurrer are not to be applied in such cases; that all that is required is an honest intention to conform to the statute, and to carry out its provisions in good faith. Beyond that I think the statute has no efficacy; beyond that I think it may be held to be merely directory. I think that any irregularity arising from motives other than those of an evil character—any slight irregularity, such as may arise in any case in spite of the greatest care and caution—is not fatal to the indictment.

Some points made by this plea struck me at first with great force, and it was very difficult to get over them; but, upon full reflection and looking into the authorities, it is sufficient to say that most of them come within the category of the matters in regard to which the law, in my judgment, is clearly directory, and only directory.

The point that gave me most trouble in my examination of the case, and caused me to hesitate for two or three days, was the fact that one of the grand jurors named in the *venire* was

not put into the box by any competent authority and not drawn from it. But his name was in the *venire*, and there is no imputation that it was put there in bad faith. There is no light thrown upon the subject as to how, or why, or wherefore, or under what circumstances it was put there. His name was regularly in the *venire*, and the marshal had no choice but to serve him, and it is not contended that he had not the qualifications required by law.

He assisted in finding the indictment, and it is before the court. Now, I think that this fact comes within the category of mere irregularities, which will not be permitted to vitiate the entire action of the grand jury, and I therefore say that, so far as that point is concerned, I feel warranted in overruling it.

But I wish to add, in this connection, that the proceedings of the grand jury are wholly *ex parte*. The defendant has no right to be present himself or by counsel; he has no right to send witnesses to the grand jury, and the grand jury cannot, without committing perjury, disclose anything that is at all material, or that has transpired in regard to this case. Doing so would involve the crime of perjury. The district attorney, if he be in possession of any facts in that connection, cannot disclose them without a gross breach of duty. Whatever occurs, then, in regard to the constitution of the grand jury, is really a matter of very little importance to the defendant. It is fairly to be supposed that if one grand jury, made up in good faith, has found an indictment, another grand jury, upon the same testimony, would find another indictment; so that the only benefit resulting to the defendant, even if that be a beneficial result, would be a delay before the period of trial.

I therefore regard any defect in the organization, summoning, and empanelling, and the proceedings of a petit and grand jury, in a very different light. And if, in this case, there were a petit jury, in regard to any of whom any such defect existed, as is claimed to exist, against those of the grand jury, while I would not say in advance what my judgment would be, I feel bound to say that I should regard them as having a very different amount of gravity from any of the

objections that have been insisted upon and presented by this plea.

Upon all the facts, as they are disclosed, the whole structure of the plea, in the light of the authorities, must fail; and the demurrer will be sustained, and the party must plead to the merits.

