UNITED STATES v. CAPLIS et al.

(District Court, W. D. Louisiana, Shreveport Division. May 24, 1919.)

No. 2526.

GRAND JURY ☞7—METHOD OF SELECTION—APPOINTMENT OF JURY COMMISSIONER.

Judicial Code, § 276, as amended by Act Feb. 3, 1917 (Comp. St. 1918, § 1253) providing for the selection of names of persons from whom grand and petit jurors shall be drawn by the clerk and a commissioner appointed by the judge, who shall be "a well known member of the principal political party * * * opposing that to which the clerk may belong" so far as relates to the action of the judge in appointing a commissioner is directory only, and the law was not violated by the appointment of a commissioner who was then registered as an Independent, although he had been for many years a member of the principal party opposed to that of the clerk.

Criminal prosecution by the United States against Tom Caplis and others. Plea in abatement overruled.

Joseph Moore, U. S. Atty., and J. H. Jackson, Asst. U. S. Atty., both of Shreveport, La.

Foster, Looney & Wilkinson, of Shreveport, La., for defendants.

JACK, District Judge. The defendants, charged with conspiracy to violate the Selective Service Draft Act (Act May 18, 1917, c. 15, 40 Stat. 76 [Comp. St. 1918, §§ 2044a–2044k]), have filed a plea in abatement, based on the allegation that the jury commissioner who assisted in the drawing of the grand jury which returned the indictment is not a well-known member of the principal political party in the district opposed to that to which the clerk belongs, as required by section 276 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1164), as amended by Act Feb. 3, 1917, c. 27, 39 Stat. 873 (Comp. St. 1918, § 1253). The clerk, it is alleged, is a Democrat; whereas, the commissioner is registered as an Independent; consequently, the defendants allege the grand jury was illegally drawn, and the indictment should be abated and set aside.

Section 276 of the Judicial Code as amended is as follows, the provision relating to a deputy clerk having been incorporated in the section by the amendment of February 3, 1917:

"All such jurors, grand and petit, including those summoned during the session of the court, shall be publicly drawn from a box containing, at the time of each drawing, the names of not less than three hundred persons, possessing the qualifications prescribed in the section last preceding, which names shall have been placed therein by the clerk of such court, or a duly qualified

deputy clerk, and a commissioner, to be appointed by the judge thereof, or by the judge senior in commission in districts having more than one judge, which commissioner shall be a citizen of good standing, residing in the district in which such court is held, and a well-known member of the principal political party in the district in which the court is held opposing that to which the clerk, or a duly qualified deputy clerk then acting, may belong, the clerk, or a duly qualified deputy clerk, and said commissioner each to place one name in said box alternately, without reference to party affiliations, until the whole number required shall be placed therein."

The evidence shows that the clerk of court is a Democrat. The commissioner came originally from Illinois, and has lived in the state of Louisiana about 27 years, during which time he has always been regarded and considered a Republican. He testifies that he has considered himself a Republican ever since he was old enough to vote, and that he has never affiliated with the Democratic party, nor voted in its primaries, though on one or two occasions in a local election, he has voted for the Democratic candidate; that he has served on the Republican state executive committee, and at one time was a candidate of that party for state treasurer. In Louisiana he has always voted the national Republican ticket, though he has sometimes in local elections "scratched" a party candidate he thought undesirable, and voted for another on the opposite ticket whom he thought better qualified. Under a recent state statute, requiring that a voter fill in on his registration blank the party, if any, with which he affiliates, he registered as an Independent.

While the defendants allege that they were greatly prejudiced as a result of such appointment of the jury commissioner, it has not been suggested, nor is it apparent, in what way they were or could have been prejudiced. They do not claim to have themselves been members of a political party opposed to that of the clerk. There was no partisan alignment in the enactment of the Draft Law, and all patriotic citizens, regardless of party, have stood firmly for its enforcement.

The same plea was made in the case of United States v. Chaires et al. (1889, in the Circuit Court for the Northern District of Florida, before Judges Pardee and Swayne) 40 Fed. 820, in which Judge Pardee, as the organ of the court, held that the provisions in the statute for the guidance of the court in the selection of a jury commissioner were advisory, and not mandatory. The court said:

"An inspection of this statute shows that the work of preparing the names of the persons possessing the qualifications of jurors, and placing them in the box, is to be done by the clerk of the court and a jury commissioner to be appointed by the judge. The duty to be performed by these parties is clearly and specifically prescribed in the statute. It may be considered, and probably is, mandatory; but it is entirely distinct from the duty devolving, under the statute, upon the judge. The plea under consideration relates entirely to the performance of the duty of the judge. By the statute, the judge is to appoint a commissioner, who shall be a citizen of good standing, who shall reside in the district in which the court is held, and who shall be a well-known member of the principal political party in the district opposing that to which the clerk belongs. The question is whether this part of the statute is mandatory or directory; whether, in appointing a jury commissioner, the judge, while endeavoring to comply with the law, must make no mistake of fact or of judgment, but must, at the peril of all subsequent proceedings, be sure to appoint a citizen, not only of standing, but of good standing, and not only a

known, but a well-known, member of the principal political party opposed to that to which the clerk belongs. The statement of the question, and the nature of the case, satisfies us that the statute in this particular is directory, and not mandatory. What is the standard for a citizen in good standing? By what rule is it to be determined who is a well-known member of a political party? Considering that the judge has knowledge, judicial or otherwise, as to the political party of the clerk, by what rule is the judge to determine which is the principal party opposed? Suppose that the clerk is an independent or a prohibitionist? In case of a challenge to the array of jurors, or a plea in abatement, who is to try the issue? All matters and questions come back to the judge. The judge, in the exercise of a sound discretion, under the responsibilities of his office, directed by the statute, passes upon the qualifications of the jury commissioner he appoints, and his action would seem to be final and conclusive, except, perhaps, in the court that can call the judge to account for misbehavior in office. Particularly must this be the case where neither injury nor prejudice nor oppression is apparent nor is averred."

The purpose of the act originally adopted in 1879 (Act June 30, 1879, c. 52, 21 Stat. 43), when many political questions were before the court, was to insure, as far as possible, the selection of jurors without regard to political bias. There were then but two political parties, or at least no third party of any consequence, and so it was provided that the commissioner should be selected from the principal political party opposed to that of the clerk. It was not contemplated, however, that in the making of a jury list each in turn should select a man of his own political faith; but, on the contrary, it was provided that such selection of jurors should be made without reference to party affiliation. This was the end. to be obtained.

Since then other parties have come into existence, and at times in certain districts it might be difficult to say which was the principal political party opposed to that of the clerk. One party might be considered such to-day, and another a week hence, after an election. Not only have new political parties arisen, but a large proportion of the electorate now aligns itself with no party, choosing rather to remain independent, to vote for those party nominees who may, in the opinion of the voter, be best qualified. As suggested in the query of Judge Pardee, suppose the clerk of the court is an Independent, affiliated with no party, how is the law to be complied with? The case at bar presents the converse of that situation. The clerk belongs to the dominant political party, and the·jury commissioner, although a lifelong Republican, is perhaps technically not a member of that party, because, in his registration, he designates himself an Independent. By his registration he denies to himself the right to participate in the primaries of either party, in order that he may remain free to vote in the general election as his own good judgment and conscience may dictate. Why should this disqualify him for appointment as jury commissioner? Would not the very purpose of the act, the elimination of politics or political influence in the selection of juries, be better subserved by the appointment of such an Independent than by the selection of a partisan, a "well-known member of the political party opposed to that of the clerk?"

The selection of a jury commissioner the law wisely leaves to the good judgment and sound discretion of the judge. Its provisions as to his party affiliation are advisory; but, even were the statute in this

particular mandatory, rather than directory, in this instance it could not be said that the appointment was not in accord with the spirit of the act and in substantial compliance with its terms.

The plea in abatement is accordingly overruled.