**UNITED STATES ex rel. HELMECKE v. RICE, Post Commander, Etc.**

(District Court, S. D. Texas, at Houston. April 14, 1922. On Rehearing, May 26, 1922.)

No. 447.

1. **Army and navy ⬅20—Draftee subject to military law from date specified in notice mailed requiring him to report for service.**

Under the second article of war (Comp. St. § 2308a), and Supplemental Rules and Regulations No. 1, Aug. 1, 1917, § 3, providing that a person drafted shall be in the military service from the date specified in the notice mailed to him by the Adjutant General, requiring him to report for service by a date specified, a draftee to whom such notice was in fact mailed was subject to military law from the date so specified, whether or not he received the notice.

2. **Evidence ⬅71—Receipt of notice by mail cannot be presumed, without clear proof of mailing.**

Where the fact of notice is made by statute to rest on the presumption that a letter mailed was received, there must be clear proof of the mailing.

3. **Evidence ⬅71—Measure of circumstantial evidence to establish mailing.**

To establish mailing of a letter containing notice, in the absence of direct evidence, there must be proof of an invariable custom or usage in an office of depositing mail in a certain receptacle, that the letter in question was deposited in such receptacle, and in addition there must be testimony of the employee whose duty it was to deposit the mail in the post office that he either actually deposited that mail in the post office, or that it was his invariable custom to deposit every letter deposited in the usual receptacle.

On Rehearing.

4. **Evidence ⬅71—Evidence held sufficient to prove mailing of notice.**

Evidence that employees in an Adjutant General's office were under instructions to exercise the utmost care in preparing and mailing notices to draftees, that there was a mailing room in charge of a clerk whose special duty and invariable custom was to place all notices in a pouch and deliver the same to a particular porter, whose invariable custom was to deposit it in the post office, such facts being shown by the testimony of the clerk and porter, together with the production from the files of a carbon copy of a notice to a draftee, *held* sufficient to establish mailing of the notice.

Habeas Corpus, on relation of Arthur A. Helmecke, against Col. Sedgwick Rice, Post Commander, Ft. Brown, Tex. Writ denied.

J. C. George and Seabury, George & Taylor, all of Brownsville, Tex., for relator.

Maj. Chas. C. Cresson, Judge Advocate, D. E. Simmons, U. S. Atty., of Houston, Tex., and Capt. D. J. Keane, of New Haven, Conn., for respondent.

HUTCHESON, District Judge. This is the application of Arthur A. Helmecke for a writ of habeas corpus to secure his release from custody under a judgment of a general court-martial, entered pursuant to a trial, that Arthur A. Helmecke should be dishonorably discharged from the service, should forfeit all pay and allowances due or to be-

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

come due, and be confined at hard labor at such place as the reviewing authority may direct, for five years. The specification on which the trial was had and under which the custody was held is:

"That Arthur A. Helmecke, alias Arthus A. Helmieke, order No. 806, registrant of the local board of Cameron county, Texas, having been lawfully inducted into the military service of the United States, did, at or near Brownsville, Texas, on or about the 14th day of November, 1917, desert the service of the United States, and did remain absent in desertion until he was apprehended at San Benito, Texas, on or about the 10th day of January, 1922."

To the jurisdiction of the court-martial the relator, through counsel, interposed a special plea on the ground that relator was not in the military service at the time of the alleged desertion, and, not being a person under military authority, would not be and is not subject to trial by court-martial. The court-martial proceeded with the trial, and sentenced Helmecke as above stated, and now, in answer to the application for writ of habeas corpus filed by the relator, affirm that relator was subject to military law under subdivision (a) of the second article of war:

"All volunteers, from the dates of their muster or acceptance in the military service of the United States, and all other persons lawfully called, drafted or ordered into, or to duty or for training in, the said service from the dates they are required by the terms of the call, draft or order to obey the same." Comp. St. § 2308a.

They affirm that Supplementary Rules and Regulations No. 1 of August 1, 1917, were in force and effect in November, 1917, when they say Helmecke was inducted, and that under this section Helmecke was in fact inducted into military service. The section referred to provided as follows:

"Section 3. Adjutant General to order persons certified on form 146–A into military service upon receipt of form 146–A by indorsement from the district board. The Adjutant General will mail to each person whose name appears thereon a notice directed to the address as shown thereon, informing him that he has been selected for military service, and ordering him to report for military service, in person or by mail or telegraph, to the Adjutant General of the state at a specified date not later than five days from the date of mailing such notice. From the date so specified, each man to whom such notice shall have been mailed shall be in the military service of the United States."

They say that Helmecke was within the class subject to such regulation, and that he was, under and in pursuance of the directions of section 3, actually inducted into and was in the military service of the United States, and they point to the following evidence as supporting this view:

(a) Registration card of Arthur A. Helmecke, signed by himself, showing him to be a natural-born citizen, 28 years of age, not claiming any exemption; address given as San Benito.

(b) Photostat copy of form 146–A, sent by the local board to the Adjutant General in the fall of 1917, advising that Arthur A. Helmecke had been called by the local board to report and submit to examination on August 23, and that he had failed to appear.

(c) The deposition of James F. Harley, Adjutant General of Texas, in which he testified with reference to the photostat copy of the filed

copy of the order to the person named therein, to wit, Arthur A. Helmecke, to report for military service, that it was the custom to accomplish the notice to report for military service in the case of any individual upon whom it was to be served in duplicate, and that in accordance with the custom and practice of his office the original 'was mailed to the person named therein, and the duplicate copy was filed in the office of the Adjutant General of Texas, and afterwards forwarded to the Adjutant General at Washington, and that the filed copy of photostat attached to the deposition was according to the records mailed to the Adjutant General of the army at Washington some time in 1919, and further testified, from the records and the photostat copy of the file copy only, that it referred to Arthur A. Helmecke, of San Benito, Texas, who according to the file copy was required to report for military service to the Adjutant General of Texas within five days from the date of the notice, to wit, five days from November 9, 1917.

In the course of the cross-examination it was made plainly to appear that Adjutant General Harley knew none of the facts that he had testified about of his own knowledge; that he testified only from records; that he identified the photostat copy, because it was a copy of the regular form used, and that his testimony that the original was mailed to Helmecke was based entirely upon the custom of his office; that he knew nothing personally about the mailing, or about the making of the original notice; that he had no personal knowledge whatever about any of the matters testified to, and that his testimony was simply from his general knowledge of how the affairs of the office of the Adjutant General were conducted; that he had no personal knowledge, nor did he ever have any personal knowledge, of the military status of the defendant, Helmecke, but that he testified from his knowledge of the rules and regulations made and established by the Provost Marshal General for the conduct of the draft, which were followed very carefully. He stated specifically that he did not mail the notice, that he did not know who mailed it, that he did not make out the notice himself, and that he could not state who made it. He further testified that he had no personal recollection with reference to the notice; that he did not sign all the notices that were sent out; that it was his understanding that all copies sent out and all notices issued were signed, or sent under his direction.

(d) The photostat copy of the file copy of the notice to report for military service referred to in the deposition above, to wit, the photostat copy of the file copy of notice to Arthur A. Helmecke, of San Benito, from the Adjutant General of Texas to report for military service on November 14. This file copy is stamped, "Mailed November 9, 1917." Form 146–B, official document certified; stating that Helmecke had been called for military duty on August 23, 1917, that being the date to submit to examination, and that he failed to present himself or to report. Form 4003, charging Helmecke with being a deserter.

To the admissibility of this evidence, as being wholly insufficient to bring Helmecke into the jurisdiction of the court-martial, relator at the hearing of the court-martial duly excepted, and now asserts that the record thus made is not sufficient to show the jurisdiction of the court-

martial over him. It is conceded by the respondent that, in order to establish the jurisdiction of the court-martial, the authorities hold that all jurisdictional facts must be alleged and appear of record absolutely, affirmatively, and unequivocally, and that an essential fact to the jurisdiction of the court-martial in this case is that the notice to report for military service was by the Adjutant General mailed to relator.

In Ex parte Jochen (D. C.) 257 Fed. 200, this court had occasion to advert to the nature of a court-martial tribunal, there saying:

"Of such weight * * * with Congress has the right of trial by jury always been, that it has never left to implication or construction the question of whether a person is subject to military law, and in each case where military jurisdiction of that kind is asserted it is incumbent upon the military to put their finger on the act which confers the jurisdiction."

[1] On the other hand, there can be no doubt that the act under which it is claimed that relator was inducted into the service is in all respects valid, and that the regulations promulgated under the authority of the President have themselves the force of law, and must be given effect accordingly. Arver v. U. S., 245 U. S. 370, 38 Sup. Ct. 159, 62 L. Ed. 349, L. R. A. 1918C, 361, Ann. Cas. 1918B, 856. Nor does the regulation under which it is claimed that Helmecke was inducted admit of any other construction than that, if the notice was in fact mailed to Helmecke, he was, from the date specified in the notice, in the military service, and this irrespective of whether or not he actually received the notice.

[2] It is therefore evident that the single question in this case is whether or not the evidence shows, in that clear, unequivocal, and certain way, that the jurisdictional fact, to wit, that the notice was mailed to Helmecke, has been established. In this view neither Ex parte Bergdoll (D. C.) 274 Fed. 458, Farley v. Ratliff (C. C. A.) 267 Fed. 682, Caplis v. U. S. (D. C.) 257 Fed. 840, or Linn Gale Case (unreported case by Judge Duval West, no written opinion), cited and referred to by relator and respondent have any application to this case. In all those cases it was conceded that notice was mailed; the mere question was whether it was necessary to prove that it had been received, and, if so, whether the evidence sufficiently showed the receipt. Here, if the notice was mailed, Helmecke was inducted; if it was not mailed, he was not inducted. The determination of this single question, whether the evidence shows the mailing, determines whether the application of the relator shall be granted or denied.

I think it clear that Congress could have provided that all persons who registered for military duty should be, from and after that date, in the military service. It is equally clear that it did not so provide, and it is further clear, from the regulations governing the matter of induction, both the one under direct investigation here and subsequent ones, that it was contemplated that inductions should not take place automatically, but only after notice, and that the character of notice which it was thought all persons subject to the draft should be entitled to was that of notice by mail, a character of notice which has often found judicial sanction (see Hurley v. Olcott, 198 N. Y. 132, 91 N. E. 270, 28 L. R. A. [N. S.] 239), and which rests upon the presump-

tion, ordinarily one of fact, but, when provided by law as a form of notice, one of law, that a letter deposited in the mails will in due and ordinary course reach its destination and be delivered to the addressee. This presumption is of profound and universal application in commercial matters, and forms the basis upon the faith of which a great part of the commercial business of the country is conducted, and upon the strength of which courts ordinarily and universally act.

In Rosenthal v. Walker, 111 U. S. 193, 4 Sup. Ct. 386, 28 L. Ed. 395, the court says:

"The rule is well settled that, if a letter properly directed is proved to have been either put into the post office or delivered to the postman, it is presumed, from the known course of business in the Post Office Department, that it reached its destination at the regular time, and was received by the person to whom it was addressed."

Or, as it was stated in Ruling Case Law, vol. 21, p. 764:

"The presumption of the receipt of a letter rests absolutely upon proof of mailing, and in order to indulge the presumption of receipt there must be proof that the letter in question was mailed."

Or, as it is stated in 22 Corpus Juris, p. 98, § 39:

"The receipt of a letter by the person for whom it is intended cannot be presumed unless it is proven that the letter was properly addressed to him."

Or again (22 Corpus Juris, p. 99, § 40):

"In order to support a presumption of the receipt of a letter, there must be satisfactory proof that it was duly mailed, although such proof need not consist of direct and positive testimony as to the ultimate fact of mailing."

It then appearing that the provision for mailing in the regulation in question was made, not as an empty form, but upon the sound presumption that, if mailed, a notice will reach its destination in due course, it is evident that the provision for mailing was a substantial provision, and that it must be strictly and literally complied with, and that, without adequate proof of mailing, the jurisdiction of the court-martial falls. The rights of a civilian to be a civilian, and to invoke the constitutional right of trial by jury, and the other rights which are guaranteed to him, are substantial and vigorous, and, when these rights are sought to be taken from him under a compulsory regulation, the duty is upon the government to prove explicitly and clearly that each link in the chain which separates the relator from civil life is clearly established. In Ex parte Jochen, supra, the court took occasion to advert to the difference between a voluntary and compulsory enlistment, saying:

"Nor is there any violence done to the dictates of humanity and reason when a person, who has become voluntarily a member of the military establishment, has martial law invoked against him. The maxim, 'Volenti non fit injuria,' at once arises."

Such is not the case here, and no presumption can be indulged to supply the place of the necessary jurisdictional fact. As stated in 10 R. C. L. 881:

"No presumption will be indulged that an officer acting under a naked statutory power, with a view to divest upon certain contingencies the title of the citizen, has done his duty and complied with the law; the purchaser, relying upon the execution of the power, must show that every preliminary

step prescribed by law has been followed." Keane v. Connovan, 21 Cal. 291; Jewell v. Van Steenburgh, 58 N. Y. 85.

"Presumption in favor of the legality of official acts never goes to the extent of supplying a jurisdictional fact." 10 R. C. L. 883; Hannah v. Chase, 4 N. D. 351, 61 N. W. 18, 50 Am. St. Rep. 656; Braden v. Hoffman, 46 Ohio St. 639, 22 N. E. 930.

In the light of these views, then, let us inquire what evidence there is that the jurisdictional requirement of mailing was complied with. In 21 R. C. L. 763, there is presented an excellent résumé of the authorities upon the question of the quantum and character of proof of mailing, and from this it appears that, while there is some conflict of authority in relation to commercial transactions, the ruling principle is that the fact of mailing, where that fact is an important one, must be proven, like any other fact, by direct or circumstantial evidence, and that, where there is no direct evidence of mailing, it is not sufficient proof of mailing to offer testimony merely that the general custom of an office was to mail all letters and notices.

[3] The better rule, and that which seems to be established by the weight of authority, is that in the absence of direct evidence there must be proof of an invariable custom or usage in an office of depositing mail in a certain receptacle, that the letter in question was deposited in such receptacle, and in addition there must be testimony of the employee, whose duty it was to deposit the mail in the post office, that he either actually deposited that mail in the post office, or that it was his invariable custom to deposit every letter left in the usual receptacle, and that he never failed in carrying out that custom. The law in the case is well stated in Wm. Gardam & Son v. Batterson, 198 N. Y. 175, 91 N. E. 371, 139 Am. St. Rep. 806, reported and annotated in 19 Ann. Cas. 651, while perhaps the best considered American cases on the subject are the opinions of Judge Johnson, of the Kansas City Court of Appeals of the state of Missouri, in Goucher v. Carthage Novelty Co., 116 Mo. App. 99, 91 S. W. 447, and Sills v. Burge, 141 Mo. App. 148, 124 S. W. 606.

Now, in what respect does the proof in this case measure up to the requirements? There is absolutely no evidence of any person that he mailed the notice, while the testimony of the Adjutant General is positive that he had no personal knowledge whatever either of the signing, making, or the mailing of this notice, and that he only testified, after seeing the photostat copy of the file copy, that in his opinion from the general custom of the office, the notice was actually mailed. Outside of the evidence of the Adjutant General there is no evidence whatever proving, or tending to prove, that the notice was mailed, while there was evidence on the part of relator that he did not receive any notice, though he left his forwarding address with the postmaster at San Benito, and evidence on the part of the postmaster corroborating the relator's testimony that he did leave his forwarding address.

This testimony of the defendant and the postmaster is adverted to, not that it would have any bearing upon the matter, had there been any evidence of mailing, because, as I have above stated, the regulations have made the ordinary presumption of fact attached to the depositing of a letter in the mail an unrebuttable presumption of law,

but because, if the defendant had been silent, there might have arisen some inference against him that he received the notice, from which negative inference, from failure to testify, it might have been claimed that receipt could have been inferred. The case then stands with no evidence whatever before the court, except the testimony of the Adjutant General, which is not in the true sense of the word testimony at all, but merely hearsay. There is a legal presumption in favor of the jurisdiction of a court of record which has been invested with general jurisdiction. No such presumption arises with reference to a court-martial. It must prove the jurisdictional facts on which it relies. The fact in this case upon which that authority is grounded, and the only fact, is that this relator was inducted into military service. The proof of that induction must be found in the fact of mailing, and proof of that fact is wholly wanting, unless there is accepted as testimony the opinion of the Adjutant General, who is not in any sense acquainted with the facts, but who testified merely of his opinion that, from his general knowledge of his office affairs, he believes that certain facts transpired.

The constitutional rights of a civilian to be and remain a civilian cannot be taken from him in such fashion. For the court to hold that the authority of the court-martial in this case is established on this kind of proof would be tantamount to holding that the Adjutant General, and his force of assistants, could by industriously making and stamping cards "mailed" have placed the whole of the population in military service, and brought them all under the odious status of a deserter. It appearing, then, that the record wholly fails to show that the relator has ever been in the military service of the United States in accordance with the articles of war and the regulations adopted and promulgated in connection with that service, it is ordered that the writ applied for will issue to the respondent, requiring and directing him to release the relator from military custody.

The respondent has requested leave, should it appear to the court that the present record is not sufficient to sustain the jurisdiction of the court-martial, to offer additional evidence on the fact of mailing. See Givens v. Zerbst, 255 U. S. 11, 41 Sup. Ct. 227, 65 L. Ed. 475. This leave will be granted, and the issuance of the writ of habeas corpus will be stayed for 10 days, when, if respondent has additional evidence to offer on the point of mailing, giving the names of the witnesses, the writ shall be stayed until a hearing of such additional witnesses can be had. Should the respondent within 10 days from this date file no such statement, the writ of habeas corpus will issue to respondent, requiring and directing him to release the relator from military custody.

### On Rehearing.

[4] This matter was before the court at a previous time. It was then held that the testimony offered in the court-martial proceedings and submitted on the application for the writ, which consisted of no direct evidence that the notice in question was actually mailed, but merely of photostat copies of the reports made and the notice claimed to have been issued in the Helmecke matter, together with the oral

testimony of the Adjutant General that he knew nothing about the fact of mailing, but knew that it was the custom of the office to cause all such notices to be mailed, and that from the photostat copies he would say that the notice in question had been mailed, was insufficient to prove the fact of mailing.

It was also there held:

"That the fact of mailing, where that fact is an important one, must be proven like any other fact, by direct or circumstantial evidence, and that where there is no direct evidence of mailing, it is not sufficient proof of mailing to offer testimony merely that the general custom of an office was to mail all letters and notices. The better rule, and that which seems to be established by the weight of authority, is that in the absence of direct evidence there must be proof of an invariable custom or usage in an office of depositing mail in a certain receptacle; that the letter in question was deposited in such receptacle, and in addition there must be the testimony of the employee whose duty it was to deposit the mail in the post office that he either actually deposited it in the post office, or that it was his invariable custom to deposit every letter placed in the receptacle, and that he never failed in carrying out that custom."

It was thereupon held that, unless the respondent should within 10 days from the filing of the opinion apply for the right to thereafter offer testimony establishing the fact of mailing, the writ of habeas corpus applied for should issue. Respondent duly made his application, and has now offered his additional testimony, which consisted of—

(1) The originals of the reports, and other documents, photostat copies of which were offered in the court-martial hearing, including the actual carbon copy of the notice to Helmecke.

(2) The testimony of Dr. Sidney Smith that he was the chairman of the district board, and that he identified form 146-A, and that this form 146-A on which the name of Helmecke appeared as a delinquent was the original form sent by the local board to the district board, and by them to the Adjutant General.

(3) The testimony of James Harley and George H. Carter, the one Adjutant General of Texas in, on, and prior to November 9, 1917, the other in general charge of the selective service draft on and prior to the same date, both of whom testified that one Jerry E. Brophy was a clerk in charge of the mailing office, which had to do with mailing of all mail with reference to draft delinquents, and that Tom Brown was a porter in the Adjutant General's office, whose duty was to receive and place in the post office all mail leaving that office.

These witnesses, especially Carter, testified definitely and fully of the general rules and instructions issued by them, and the general custom of the mailing office and the porter in carrying out the instructions, that the utmost care should be used in checking over the delinquent lists, preparing duplicate and original, the one for filing, the other for mailing, and placing them in mail sacks to be mailed, and in actually having such mail carried to the post office; that according to their experience this routine was punctually and exactly carried out with the utmost care.

(4) The testimony of Jerry E. Brophy to the effect that he was in charge of an office devoted exclusively to mailing and handling mail

with reference to delinquents; that there was an invariable custom or usage in the office with reference to preparing an original and carbon of notices to be sent to delinquents, of having such notices carried together, carbon and original, to the Adjutant General for signature of the original, and of having them returned to the mailing office, the original to be placed in its envelope for mailing, the carbon to be placed in the file of the delinquent. He also testified to the invariable custom or usage of thereafter depositing the mail in the pouch which hung at his desk, and of causing this mail to be carried to the porter, Tom Brown, for mailing in the post office. He also identified the carbon as the carbon of the original notice sent to Helmecke, and testified that the uniform and invariable custom of the office was not to place the carbon in the delinquent file until after the original had been placed in its envelope for mailing. He testified that the invariable custom was to use government franked envelopes, and that the strictest rules prevailed to insure that the office was kept clean; that letters were actually mailed, and not lost, and that it was an invariable custom of the office, when preparing the duplicate and original, and before they were presented to the Adjutant General for signature, to write on them the mailing date, and that it was also the invariable custom of the office, in order to insure that the delinquent would have the full number of days stated in the notice, that all notices made for a certain day were on that day mailed; that while he had no personal knowledge of the particular notice to Helmecke, or to any other delinquent, because there was a vast amount of notices handled from the office, he was satisfied to swear, and would swear, from the general custom, that the notice to Helmecke was mailed on November 9, 1917, the date stamped on the notice; that he knew personally that the mail sack was filled and taken up, because the mail sack was hanging at his desk; that he was in charge of the office for mailing and receiving mail, and that his office was organized for the purpose of collecting and accurately mailing out notices; that it was part of his duty to see that the mail was not allowed to remain on the desk and not to fail of being mailed, and that there never was any mail in the pouch the morning after, because the last thing they did in the afternoon was to take the mail out and deliver it to Brown.

Tom Brown testified that he had been a porter in the Adjutant General's office for 23 years; that he had been straightly instructed with reference to mailing; that he knew Mr. Brophy; that it was his duty to handle the mail from Mr. Brophy's department, and that he knew, from the method of handling the mail, that all mail that was brought up from that department was received by him and placed in a secured pouch, so that no mail could be lost therefrom, and was by him deposited in the post office, which was at that time in the Capitol Building at Austin, and on the same floor with the Adjutant General's office; that he had been requested to get the mail out on the same day it was brought in, and that he always did it; that he never had any mail presented to him that he did not get into the post office on the same day.

There is no doubt that, except for the fact that there is no direct evidence that this particular letter to Helmecke was prepared and

placed in an envelope for mailing, correctly addressed, the testimony in this case measures not only fully, but exactly, up to the requirements of all the adjudged cases. Here is proof in the most meticulous and satisfactory way of an invariable custom or usage in an office of depositing mail in a certain receptacle, and in an equally accurate and meticulous way that all mail deposited in that receptacle was by the employee whose duty it was to deposit it in the post office, so deposited.

Can it be said that the evidence is wanting in proof of the other requisite, that the letter in question was deposited for mailing in the receptacle? On this point I think there can be little doubt. The existence of a carbon requires the existence of the original, and proof that a carbon existed requires the inference that an original also existed. It is therefore indisputably true that there was made an original and a carbon of the Helmecke notice, just as in other cases.

It is true there is no proof that the original was signed or mailed, but there is direct proof that the carbon was placed in the delinquent's file, and there kept, as was the invariable custom with reference to mailing delinquent notices, and there is proof that the original was never separated from the carbon until it was placed in the envelope for mailing. Can it be that such circumstances as these are insufficient to establish the ultimate fact that the original was prepared and placed in the letter for mailing? I think not.

In 22 Corpus Juris, p. 99, it is said:

"In order to support a presumption of the receipt of a letter, there must be satisfactory proof that it was duly mailed although such proof need not consist of direct and positive testimony of the ultimate fact of mailing."

In 10 Ruling Case Law, § 196, it is said:

"Generally speaking, issues may be established in both civil and criminal cases by circumstantial evidence"

—and that conviction for the greatest crimes and matters of the gravest importance may rest alone on circumstantial evidence is too well known to require the citation of authorities.

Here the important facts are established by circumstantial evidence in the most complete and explicit way: (1) There was an office, the sole duty of which was to check delinquents; (2) this office was organized with the utmost care to accomplish the purpose intended; (3) in preparing notices to delinquents the originals and carbons were always prepared at the same time, with their date for mailing written on them; (4) that they were kept together, and were together sent to the Adjutant General, where the original was signed by him and the two returned to the office; (5) that here they were separated, the carbon then and only then going into the permanent file, the original in the mail; (6) that there was a carbon copy of the notice to Helmecke made on November 9, in the Helmecke file; (7) that provision was made to have these letters placed in the mail; and (8) that they were uniformly so placed.

The detail of the wealth of these circumstances shows that the evidence now offered is not only sufficient to support an inference that

the letter in question was prepared and mailed, but in the light of reason is not reconcilable with any other inference. I am therefore of the opinion that the fact upon which the authority of the court-martial rests, to wit, that the induction notice was mailed to Helmecke, has been established absolutely, affirmatively, and unequivocally, and that the writ of habeas corpus applied for should be denied; and it will be so ordered.