## BROOKMAN v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 12, 1925.)

No. 6690.

1. **Jury ⬅59(1,4)—Separate appointment for each term of court not needed; time of appointment and term of service of jury commissioner in discretion of judge.**

Under Judicial Code, § 276 (Comp. St. § 1253), requiring District Judge to appoint a jury commissioner, a separate appointment is not required to be made for each term of court, nor is the time or term of the commissioner's service in any way fixed or limited, but time of appointment and term of service rest in sound judicial discretion of judge.

2. **Jury ⬅59(1)—Statute as to appointment of jury commissioner from principal opposition political party held not mandatory.**

The provision of Judicial Code, § 276 (Comp. St. § 1253), that jury commissioner shall be a well-known member of the principal political party opposing that to which the clerk may belong, is not mandatory, but advisory, and his continued tenure of office is not invalidated because the party to which he belongs loses its standing as the principal opposition party.

3. **Criminal law ⬅1163(1), 1166(2), 1166½(5)—Irregularity in drawing jurors, to avail defendant, must have been prejudicial, and burden to show prejudice is on defendant.**

Any irregularity in drawing jurors, grand or petit, cannot avail a defendant whose rights have not been prejudiced thereby, and burden is on him to show by averment of specific facts that he has been prejudiced, and how.

In Error to the District Court of the United States for the District of Minnesota; John F. McGee, Judge.

Le Roy Brookman was convicted of violation of the Harrison Anti-Narcotic Act (Comp. St. §§ 6287g et seq.), and he brings error. Affirmed.

For opinion below, see 1 F.(2d) 528.

Donald G. Hughes, of Minneapolis, Minn. (Neil Hughes, of Minneapolis, Minn., on the brief), for plaintiff in error.

Lafayette French, Jr., U. S. Atty., of St. Paul, Minn.

Before SANBORN, LEWIS, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge. Mr. Brookman was indicted in two counts, tried, convicted, and sentenced to imprisonment in the penitentiary and to pay a fine of $2,000 for each offense, for knowingly dealing in and selling morphine and cocaine without having registered as a dealer or paid the special tax required by section 6287g of the U. S. Compiled Statutes. His counsel make but one complaint of the proceedings at his trial, and that is that the court below overruled his challenge to the entire panel of petit jurors serving at the October term, 1923, when he was tried, because they were selected by Joel M. Dickey, a member of the Republican party, and John R. Donahue, a member of the Democratic party, and not a member of the Farmer-Labor party, which was "the principal political party in the district in which the (trial) court" was held, opposing the Republican party, to which the clerk belonged, as required by section 276 of the Judicial Code (U. S. Compiled Statutes, § 1253). Mr. Donahue had been appointed jury commissioner about 20 years before the year of the trial of this case. He was appointed at a time when the Democratic party was the principal political party opposing that to which the clerk of the court belonged; but, at the last general election before the jurymen were selected for the term of court at which the defendant was tried, the Farmer-Labor party had become the principal political party opposing the Republican party, to which the clerk belonged.

Counsel for the defendant failed to print or file his brief in this court within the time prescribed by subdivision 1 of rule 24, and the United States attorney moved to dismiss the case on that ground. But the attorney for the defendant, who represented him at the trial below, met this motion with his affidavit that the reason for his failure to file his brief in time was that he had been incapacitated for work during part of the time by sickness, and had been engaged in the trial of a murder case during another part of the time, so that he was late in the preparation of his brief, and he prepared his printed brief and presented it to the court during the term at which his case was for argument.

[1] The contentions he makes in his brief are (1) that the requirements of the selection of the jurors by a clerk and a commissioner who are members of the two principal opposing political parties are mandatory; (2) that a failure to comply with these requirements is fatal and prejudicial error; and (3) that a separate appointment of a commissioner must be made by the court for each term thereof. In support of these positions he has cited Dunn et al. v. United States, 238 F. 508, 151 C. C. A. 444; United States v. Murphy et al. (D. C.) 224 F. 554, 562; 24 Cyc. § 217; and United States v. Ambrose (C. C.) 3 F. 283. These authorities and the brief of counsel for defendant have been carefully read and considered, but they have not proved persuasive. The provision of the act of Congress for the appointment of the commissioner is simply that he is "to be appointed by the judge." It does not require that a separate appointment shall be made for each term of court, nor does it in any way fix or limit the time or term of the commissioner's service. It grants the power to appoint to the judge, and leaves the time of the appointment and the term of the service to his sound judicial discretion. There is, therefore, no sound reason to support the contention that his power is limited to the appointment of a commissioner for a single term of court.

The other objections of counsel to the ruling of the court below were so conclusively answered by Judge McGee in that part of his opinion in United States v. Brookman (D. C.) 1 F.(2d) 528, 532, 534, which we now quote, that we hereby adopt the part so quoted as the opinion of this court in this case and affirm the judgment below:

"* * * Much confusion will be avoided in examining the case law on the subject, if a distinction is made between acts that are to be performed by the judge in making the appointment of a jury commissioner and the acts of the commissioner and clerk in the discharge of their duties. This distinction is made by Judge Pardee in United States v. Chaires (C. C.) 40 F. 820, 821, 822, in which it is said:

[2] "'An inspection of this statute shows that the work of preparing the names of the persons possessing the qualifications of jurors, and placing them in the box, is to be done by the clerk of the court and a jury commissioner to be appointed by the judge. The duty to be performed by these parties is clearly and specifically prescribed in the statute. It may be considered, and probably is, mandatory; but it is entirely distinct from the duty devolving, under the statute, upon the judge. The plea under consideration relates entirely to the performance of the duty of the judge. By the statute, the judge

is to appoint a commissioner, who shall be a citizen of good standing, who shall reside in the district in which the court is held, and who shall be a well-known member of the principal political party in the district opposing that to which the clerk belongs. The question is whether this part of the statute is mandatory or directory; whether, in appointing a jury commissioner, the judge, while endeavoring to comply with the law, must make no mistake of fact or of judgment, but must, at the peril of all subsequent proceedings, be sure to appoint a citizen, not only of standing, but of good standing, and not only a known, but a well-known, member of the principal political party opposed to that to which the clerk belongs. The statement of the question, and the nature of the case, satisfies us that the statute in this particular is directory, and not mandatory. What is the standard for a citizen in good standing? By what rule is it to be determined who is a well-known member of a political party? Considering that the judge has knowledge, judicial or otherwise, as to the political party of the clerk, by what rule is the judge to determine which is the principal party opposed? Suppose that the clerk is an independent or a prohibitionist? In case of a challenge to the array of jurors, or a plea in abatement, who is to try the issue? All matters and questions come back to the judge. The judge, in the exercise of a sound discretion, under the responsibilities of his office, directed by the statute, passes upon the qualifications of the jury commissioner he appoints, and his action would seem to be final and conclusive, except, perhaps, in the court that can call the judge to account for misbehavior in office. Particularly must this be the case where neither injury nor prejudice nor oppression is apparent nor is averred.

" 'We have examined the case of U. S. v. Ambrose [C. C.] 3 F. 283, relied upon by counsel for defendants as holding that the statute, as to the qualifications of the jury commissioner, is not directory merely, but is mandatory. We find no such question in issue in that case, nor any holding or language of the presiding judge therein to warrant the conclusion that such ever was his opinion. The matter presented by this plea is naturally an interesting and tender subject to this court (one of the judges having made the appointment in question), and we would be disposed, ex proprio motu, to suspend ruling on this plea, and direct an issue thereon, and an investigation thereunder, but for the fact, of which we take judicial notice

as a part of the history of this and the preceding term, that upon the identical question the court has had and allowed the fullest investigation; that the real issue therein was not as to whether the jury commissioner was a Democrat, and a known Democrat, but whether he was a well-known Democrat, and thereafter, upon the evidence, the court has held and decided that the jury commissioner was and is a well-known member of the principal political party in the district opposing that to which the clerk belongs (U. S. v. Ewan [C. C.] 40 F. 451), and a further investigation is not necessary, either for the vindication of the court or the protection of parties.'

"In United States v. Caplis (D. C.) 257 F. 840, the defendants were charged with conspiracy to violate the Selective Draft Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k), and filed a plea in abatement, based on an allegation that the jury commissioner who assisted in the drawing of the grand jury which returned the indictment was not a well-known member of the principal political party in the district opposed to that to which the clerk belonged, as required by section 276 of the Judicial Code, as amended by the Act of February 3, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 1253). The clerk, it was alleged, was a Democrat; whereas the commissioner was registered as an Independent. Consequently the defendants allege that the grand jury was illegally drawn and that the indictment should be abated and set aside. The court said:

" 'The evidence shows that the clerk of court is a Democrat. The commissioner came originally from Illinois, and has lived in the state of Louisiana about 27 years, during which time he has always been regarded and considered a Republican. He testifies that he has considered himself a Republican ever since he was old enough to vote, and that he has never affiliated with the Democratic party, nor voted in its primaries, though on one or two occasions, in a local election, he has voted for the Democratic candidate; that he has served on the Republican state executive committee, and at one time was a candidate of that party for state treasurer. In Louisiana he has always voted the national Republican ticket, though he has sometimes in local elections "scratched" a party candidate he thought undesirable, and voted for another on the opposite ticket whom he thought better qualified. Under a recent state statute, requiring that a voter fill in on his registration blank the party, if any, with

which he affiliates, he registered as an Independent.

"'While the defendants allege that they were greatly prejudiced as a result of such appointment of the jury commissioner, it has not been suggested, nor is it apparent in what way they were or could have been prejudiced. They do not claim to have themselves been members of a political party opposed to that of the clerk. There was no partisan alignment in the enactment of the Draft Law, and all patriotic citizens, regardless of party, have stood firmly for its enforcement. The same plea was made in the case of United States v. Chaires et al. ([1889] in the Circuit Court for the Northern District of Florida before Judge Pardee and Swayne) 40 F. 820, in which Judge Pardee, as the organ of the court, held that the provisions in the statute for the guidance of the court in the selection of a jury commissioner were advisory, and not mandatory. The court said: [The quotation is that made above from the Chaires Case].

"'The purpose of the act originally adopted in 1879 (Act June 30, 1879, c. 52, 21 Stat. 43), when many political questions were before the court, was to insure, as far as possible, the selection of jurors without regard to political bias. There were then but two political parties, or at least no third party of any consequence, and so it was provided that the commissioner should be selected from the principal political party opposed to that of the clerk. It was not contemplated, however, that in the making of a jury list each in turn should select a man of his own political faith; but, on the contrary, it was provided that such selection of jurors should be made without reference to party affiliation. This was the end to be obtained.

"'Since then other parties have come into existence, and at times in certain districts it might be difficult to say which was the principal political party opposed to that of the clerk. One party might be considered such to-day, and another a week hence, after an election. Not only have new political parties arisen, but a large proportion of the electorate now aligns itself with no party, choosing rather to remain independent, to vote for those party nominees who may, in the opinion of the voter, be best qualified. As suggested in the query of Judge Pardee, suppose the clerk of the court is an Independent, affiliated with no party, how is the law to be complied with? The case at bar presents the converse of that situation. The clerk belongs to the dominant political party, and the jury commissioner, although a lifelong Republican, is perhaps technically not a member of that party, because, in his registration, he designates himself an Independent. By his registration he denies to himself the right to participate in the primaries of either party, in order that he may remain free to vote in the general election as his own good judgment and conscience may dictate. Why should this disqualify him for appointment as jury commissioner? Would not the very purpose of the act, the elimination of politics or political influence in the selection of juries, be better subserved by the appointment of such an Independent than by the selection of a partisan, a "well-known member of the political party opposed to that of the clerk"?

"'The selection of a jury commissioner the law wisely leaves to the good judgment and sound discretion of the judge. Its provisions as to his party affiliation are advisory; but, even were the statute in this particular mandatory, rather than directory, in this instance it could not be said that the appointment was not in accord with the spirit of the act and in substantial compliance with its terms. The plea in abatement is accordingly overruled.'

"The two cases cited are the only ones called to my attention which deal directly with the precise question involved in the first assignment of error, and go directly to the act or omission of the judge in the performance of the duty imposed upon him by the provisions of section 276 of the Judicial Code, and if they announce a correct construction of section 276, supra, they dispose of the first assignment of error adversely to the petitioner.

[3] "If for any reason the Chaires and Caplis Cases ought not to be followed, then under all the federal cases dealing with the subject, beginning with Agnew v. United States, 165 U. S. 36, 44, 17 S. Ct. 235, 41 L. Ed. 624, the challenge was properly overruled. The cases in which the manner of drawing juries under section 276 of the Judicial Code has been assailed are numerous, and an examination of them will disclose without an exception that they lay down the rule that any irregularity in drawing jurors, grand or petit, cannot avail a defendant whose rights have not been prejudiced thereby, and that the burden is upon him to show by the averment of specific facts that he has been prejudiced, specifying how, in what manner, and to what extent, and, in making this showing, general statements and general conclusions of law or fact, or both, are to be avoided, and, if resorted to, will be disre-

garded. The following are probably the leading cases on this subject: Agnew v. United States, 165 U. S. 36, 44, 17 S. Ct. 235, 41 L. Ed. 624; United States v. Ambrose (C. C.) 3 F. 283, 286; United States v. Eagan (Judges Brewer and Thayer; C. C.) 30 F. 608; United States v. Benson (C. C.) 31 F. 896; United States v. Ewan (C. C. Fla.) 40 F. 451, 453; United States v. Chaires (C. C. Fla.) 40 F. 820, 822, 823; Wolfson v. United States (C. C. A. 5) 101 F. 430, 433, 41 C. C. A. 422; United States v. Greene (D. C.) 113 F. 683; United States v. Cobban (C. C. Or.) 127 F. 713, 715, 716; United States v. Merchants' & Miners' Trans. Co. (C. C. Ga.) 187 F. 355, 362; United States v. Nevin (D. C. Colo.) 199 F. 831, 833; United States v. Murphy (D. C. N. Y.) 224 F. 554, 559; Moffatt v. United States (C. C. A. 8) 232 F. 522, 529, 146 C. C. A. 480; Dunn v. United States (C. C. A. 5) 238 F. 508, 151 C. C. A. 444; United States v. Caplis (D. C.) 257 F. 840; Williams v. United States (C. C. A. 9) 275 F. 129.

"The record shows no objections to any rulings made on the trial admitting or excluding evidence. The defendant did not go upon the stand, nor offer any evidence in his own behalf. The evidence as to his guilt was conclusive.

"There were no exceptions taken to the charge, and there is no claim made that the defendant did not have a fair trial, nor that the jurors who sat in the case were not fair and impartial, and possessed of the qualifications required by law. In the challenge to the panel mentioned in the first assignment of error, there is no intimation or hint, by general allegation or specific averment of facts, or otherwise, that the defendant was in any manner prejudiced by the participation of Mr. Donohue as jury commissioner in the selection of jurors for the October, 1923, term of this court. * * * "

The motion to dismiss the case is denied, and the judgment below is affirmed.