(C.D. 2614)

Charles M. Schayer v. United States

United States Customs Court, Third Division

(Decided February 2, 1966)

*Allerton deC. Tompkins* for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Bernard J. Babb,* trial attorney), for the defendant.

Before Donlon and Richardson, Judges; Donlon, J., concurring

Richardson, Judge: The merchandise of this protest consists of cameras, cases, and other photographic equipment, imported at Denver, Colo., from Japan, some of which merchandise was advanced in value upon appraisement. It is plaintiff's claim herein that liquidation of the involved entry is premature, illegal, and void because notice of appraisement was not given as required by law. Plaintiff contends that notice of appraisement was not delivered and that such notice was not received by plaintiff. Defendant contends that notice of appraisement was given and that plaintiff has failed to prove nondelivery of such notice.

The pertinent statutory and regulatory provisions governing notice of appraisement are set forth in 19 U.S.C.A., section 1501 (section 501, Tariff Act of 1930, as amended), and section 17.6 of the Customs Regulations. Section 1501 reads in material part as follows:

The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, . . . . The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is . . . filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. . . .

And section 17.6 reads as follows:

The collector at the headquarters port, or the deputy collector in charge at any other port, shall promptly give notice of appraisement on customs Form 4301 when such notice is required by section 501, Tariff Act of 1930, as amended. The notice shall be prepared in duplicate and the retained copy, with the date of mailing or delivery noted thereon, shall be securely attached to the invoice.

Testimonial and documentary evidence were presented upon the trial on the question of whether notice of appraisement was given. Charles M. Schayer, a licensed customs broker and the plaintiff herein, testified on his own behalf. He explained the procedure in effect in his office for routing incoming mail addressed to him. He testified that all mail is put on his desk, or his secretary's desk where it is opened and ultimately placed on his desk; that all incoming official documents addressed to him from the collector of customs are handled in the same manner; that from 1960 the only persons in his office who have authority to receive official customs documents besides himself are Miss Celeste Siegel and Mr. Benjamin Fried; that during his absence from the office, Miss Siegel, his secretary, received the official documents and would take the necessary action, where immediate attention was required, and place the documents on his desk; that Mr. Fried followed the same procedure; and that this procedure has not varied since both persons joined his staff.

Mr. Schayer further testified that he was familiar with customs Form 4301—the Notice of Appraisement or Reappraisement; that during 1960 and 1961, upon receipt of such a notice, he would check his files to determine whether he had any information regarding an increase in value; that if the increase was substantial or if he was not closely related to the particular account, he would forward the form with a covering letter to the named importer, and if the form was not sent, it would be filed according to the entry number. He also stated that the ultimate consignee, Heiland, a division of Minneapolis Honeywell, had instructed him to forward all notices relating to the involved entry to it for further action; that between September 1, 1960, the date that the appraiser made his return of value, and February 13, 1962, the date of liquidation, he did not remember receiving a written notice of an advance through the mail; and that he checked his files relating to entries both prior to and subsequent to the involved entry, and it was not misfiled. The witness also testified that during the same period no notice of an advance was given to him personally, and that he did not authorize the collector to serve him or his staff in any other manner.

Celeste Siegel testified that her duties as secretary to Mr. Schayer, the plaintiff herein, included taking care of the mail and bookkeeping; that all incoming mail is put on her desk, which she goes through and puts on Mr. Schayer's desk; that, in his absence, she takes care of those

matters which require immediate attention; that incoming official customs notices, such as customs Form 4301, are placed on Mr. Schayer's desk and, in his absence, she receives them; that during the period between September 1, 1960, and February 13, 1962, she received no written notice of appraisement relating to the subject entry through the mail or otherwise; and that she checked the files which she thought were pertinent for such a notice, independently of Mr. Schayer. The witness also testified that when she received documents by hand in the customhouse she would find, between three or four times a month, documents which were addressed to other brokers.

Charles L. Baird, a liquidator in the office of the collector of customs at Denver, Colo., testified that he was familiar with the entry papers here involved since he handled the papers for liquidation from the time he received notice of the advance from the appraiser. The witness identified his signature on a copy of customs Form 4301 which was received in evidence. Mr. Baird testified that the form was a carbon copy of the original which he made out on November 3, 1961; that he put the original customs Form 4301 in a folder for Charles M. Schayer, which was in the collector's office, in conformity with normal procedure at that time; that this practice was in effect for approximately 6 years prior to November 3, 1961; and that it was his assignment to issue notices of appraisement.

Mr. Baird explained that the purpose of the folder was to contain papers which were to go to the brokers, and that these papers were picked up by the brokers, including Mr. Schayer; that in November 1961, there were at least two folders, one for each broker in the collector's office; that the folders are a heavy bookbinder type which are kept on the counter about 2 feet from the cashier's desk and about 3½ feet from the desks of other customs employees and are under the careful surveillance of the customs employees; and that he has seen John Caldwell (a runner in the plaintiff's employ), Miss Siegel, Mr. Fried, and Mr. Schayer on many occasions during the period in question, taking papers from the Schayer folder.

The foregoing constitutes the evidence before the court. There is, however, no evidence of any attempt on the part of the collector to give notice of appraisement by means of mailing the notice, nor any evidence of the taking of such notice by the plaintiff or any of his employees from the folder in the collector's office. And it is conceded that notice of appraisement did not issue to anyone other than the plaintiff-broker.

Does the evidence establish a personal delivery of notice of appraisement to plaintiff in compliance with the applicable statutory and regulatory authority? In this connection, it should be noted that the filed copy of the alleged notice of appraisement contains a notation in the handwriting of Mr. Baird which reads "To Schayer 11–3–61 CLB."

However, this notation does not constitute a notation of the date of mailing or delivery which is required by section 17.6, for the reason that the notation of a date does not disclose the manner in which service of the notice was made. It is implicit in the language of section 17.6 that such information regarding the manner of service be given. Consequently, the absence of such information on the filed copy of the alleged notice of appraisement deprives the collector's proceedings, insofar as notice of appraisement is concerned, of any presumption of regularity and casts upon the defendant the burden to establish in the first instance the personal delivery of the notice of appraisement. *Astra Trading Corp.* v. *United States*, 52 Cust. Ct. 31, C.D. 2430; *Nippon Dry Goods Co.* v. *United States*, 11 Cust. Ct. 433 Reap. Dec. 5940, affirmed, *United States* v. *Nippon Dry Goods Co.*, 13 Cust. Ct. 373, Reap. Dec. 6054.

The effect of the evidence adduced by defendant is to establish that the original of the alleged notice of appraisement that was prepared in duplicate by Mr. Baird was placed within a folder supplied by the collector and designated for use by the plaintiff in receiving documents from customs. Defendant contends that such practice constitutes personal delivery of the notice of appraisement.

Personal delivery of notice of appraisement by means of deposit of such notices in receptacles maintained in the collector's office for use by persons to whom such notices are directed was the subject for decision in *Clayburgh Bros.* v. *United States*, 65 Treas. Dec. 1636, Reap. Dec. 3262, and *R. W. Smith et al.* v. *United States*, 55 Cust. Ct. 216, C.D. 2578, decided October 4, 1965. In the *Clayburgh* case, the court apparently determined the issue to be one of fact as to whether notice of appraisement had been given by means of the placement of the notice in the broker's box in the customhouse, the court there concluding upon the evidence that no such notice had been given. In the *Smith* case, *supra*, recently decided by this division, the court concluded that notice of appraisement had not been given by means of the placement of the notice in the broker's box in the customhouse, one of the two judges resolving the issue as a matter of law, and the other judge resolving the issue as a matter of fact.

In the instant case, Mr. Baird stated unequivocally that the notice was placed in the folder, and there is nothing in the record which contradicts his statement. The issue before the court here is clearly one of law, namely, whether placement of a notice of appraisement in the broker's folder constitutes personal delivery of such notice.

In Webster's New International Dictionary (2d edition, 1958), the words "personal" and "delivery" are defined as:

personal . . . 2. a Done in person, without the intervention of another; direct from one person to another; as, a *personal* inquiry; . . . b Carried on between individuals directly.

delivery . . . 2. Act of delivering up or over; surrender; transfer of the body or substance of a thing.

The word "personal" relates to an act done in person without the intervention of another. *Prete et al.* v. *Finkelstein et al.,* 193 Misc. 24, 83 N.Y.S. 2d 353. To "deliver" is to give or transfer, to yield possession or control of, to hand over; it is the physical act of transferring possession, and it implies a change of custody and necessitates transfer of possession. *Koval* v. *Liquor Control Commission,* 149 Conn. 63, 175 A. 2d 358. The Secretary of the Treasury, in making uniform the practice of collectors of customs in giving notice of appraisement by means of personal delivery, has placed the same interpretation upon the statutory words "personal delivery." Section 17.6 of the Customs Manual states in part:

(c) The personal delivery to the importer of record, his agent or attorney of an original notice of appraisement shall be accompanied by the concurrent release to the deliverer of the recipient's signed receipt overprinted, impressed by rubber stamp, typed or otherwise endorsed on the retained duplicate of customs Form 4301 as follows:

I hereby receipt for the personal delivery to me on          (date) _____

of the original notice of appraisement issued for the entry identified in this duplicate.

          (Signature, title) _____

(d) Any unavoidable departure from the prescribed . . . personal delivery routine[s] shall be made a matter of record on the retailed [*sic*] duplicate of customs Form 4301 by means of a brief explanation signed by the employee who knows as fact that the notice was . . . delivered, . . . .

The foregoing authorities compel the conclusion that "personal delivery" of a thing requires a physical transfer of such thing from one person to another.

No case has been cited by the defendant which reaches a contrary conclusion concerning the meaning of "personal delivery." The case of *United States ex rel. Helmecke* v. *Rice, Post Commander, etc.,* 281 Fed. 326, cited by defendant, is not authority for the proposition that personal delivery of a document is made by placing the document in a folder or other receptacle designated for the exclusive use of the person to whom the document is intended to be given. That case was concerned with the deposit of mail in a receptacle maintained by the United States Government for such purpose. The principle enunciated in that case is that proof of such a deposit of mail raises a presumption of delivery; and the case has been cited by this court for such principle in the delivery by mail cases. See *Orlex Dyes & Chem-*

*icals Corporation* v. *United States*, 41 Cust. Ct. 168, 171, C.D. 2036, and *Clayton Chemical & Packaging Co.* v. *United States*, 38 Cust. Ct. 617, 619, Reap. Dec. 8774.

Furthermore, it appears that the practice of putting customs Form 4301 in folders on the public counter in the collector's office has been discontinued at the port of entry. The Form 4301 notice is now mailed out in compliance with a letter received by the collector from the Bureau of Customs directing this change in practice.

Upon the instant record, the court concludes that personal delivery of notice of appraisement herein was not made by the placement of the original notice in the broker's folder maintained in the collector's office. Defendant has failed to discharge its burden of proving that notice of appraisement was personally delivered to the plaintiff. The appraisement is, therefore, incomplete, and the ensuing liquidation based thereon is invalid.

Pursuant to the provisions of 28 U.S.C.A., section 2636(d), the matter is remanded to a single judge of this court to determine the proper dutiable value of the involved merchandise in the manner provided by law.

Judgment will be entered accordingly.

### CONCURRING OPINION

DONLON, Judge: I concur in the result but not in the opinion. This case can be decided on the facts. In my opinion it should be so decided. The question here is, as it was in *Clayburgh Bros.* v. *United States*, 65 Treas. Dec. 1636, Reap. Dec. 3262, one of fact to be decided on the evidence.

Mr. Baird, the liquidator in the collector's office in Denver, testified on June 21, 1963, that on November 3, 1961, he had put plaintiff's notice, Form 4301, "into a folder or binder which is on the counter in the Collector's office" and that this was the folder for plaintiff. On cross-examination he admitted that sometimes he made mistakes, and there is credible evidence in the record of instances in the Denver office that corroborates the frequency of errors there in misplacing documents.

Plaintiff's witnesses were explicit in their testimony that, although they regularly received many documents in their "book" in the Denver customhouse, they never had received the Form 4301 which is in issue. They did not rest, as did Mr. Baird, on a categorical affirmation, but testified in detail as to their search for the document and as to their

complaints at the Denver customhouse relative to nonreceipt of this and of other papers.

When there are conflicting statements in the proofs adduced, as there are here, the court as trier of fact has the duty to find what the facts are. Weighing the testimony of record, I find the testimony of plaintiff's witnesses the more convincing. The facts, taken as a whole, do not establish receipt of Form 4301 after deposit in the plaintiff's customhouse box, notwithstanding Mr. Baird's seemingly remarkable memory for such minutiae after a lapse of more than 19 months.

I would add only that I do not interpret the statute or regulations as requiring delivery to plaintiff "without the intervention of another," as recited in the lexicographic excerpt quoted by my colleague. In my opinion, the pickup of customs documents from a broker's personal customhouse box by any one of his employees regularly visiting the customhouse for that purpose constitutes delivery to the broker. Here plaintiff has been careful, and rightly so, to show by the testimony of such employees that they never found this particular Form 4301 in plaintiff's "book" in the Denver customhouse.

On the evidentiary record, I concur in the judgment order.