**DAVIES, TURNER & CO.**

v.

**UNITED STATES.**

**C.D. 2724; Protest Nos. 63/22302 etc.**

United States Customs Court,
Third Division.
June 29, 1966.

Allerton deC. Tompkins, New York City, for plaintiff.

John W. Douglas, Asst. Atty. Gen. (Charles P. Deem, New York City, and Harvey A. Isaacs, New York City, trial attorneys), for defendant.

Before DONLON and RICHARDSON, Judges.

RICHARDSON, Judge:

This protest involves the importation of bottle blowing machines from Middlesex, England, to Philadelphia, Pa., which were assessed with duty as articles having as an essential feature an electrical device or element, not specially provided for, at 13¾ percent ad valorem under paragraph 353. This appraisement was at a value higher than the entered value, and the entries were subsequently liquidated.

The plaintiff claims that the liquidation was premature, illegal, null, and void in that no written notice of advance in value was given by the collector of customs to the consignee, his agent, or his attorney as required by 19 U.S.C.A., section 1501, and in accordance with the procedures set forth in section 17.6 of the Customs Regulations.

Section 1501 of 19 U.S.C.A. reads in material part as follows:

The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, * * *. The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is * * * filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. * * *

Section 17.6 of the Customs Regulations reads as follows:

The collector at the headquarters port, or the deputy collector in charge at any other port, shall promptly give notice of appraisement on customs Form 4301 when such notice is required by section 501, Tariff Act of 1930, as amended. The notice shall be prepared in duplicate and the retained copy, with the date of mailing or delivery noted thereon, shall be securely attached to the invoice.

There is a copy of a notice of appraisement addressed to Davies, Turner & Co., dated April 25, 1962, with the official papers, but it does not indicate whether it was mailed or personally delivered. The Government concedes that a written notice of appraisement was not mailed or hand delivered to the importer, and the issue is whether the required written notice was personally delivered to Davies, Turner & Co., the customhouse broker.

The evidence consists of the testimony of four witnesses, two for the plaintiff and two for the defendant, and three exhibits.

Arthur Cherry, import manager for Davies, Turner & Co., testified that in April 1962 the procedure for giving notice was that a customs clerk in the collector's office would place the notice Form 4301 in one of approximately 30 unlocked boxes (about 6 inches high designed to hold papers 8½ by 11 inches, having a glass front door with no back), under a counter in the entry division of the customhouse, and which were owned by the customhouse. Documents placed in box No. 4 at the customhouse for the plaintiff were taken through the front door by its messenger, brought back to the office and placed on Arthur Cherry's desk for his examination and distribution. Mr. Cherry stated that occasionally he picked up things in his box at the customhouse and that at times had found documents in his box, No. 4, at the customhouse that did not belong there, but belonged in either box No. 5 or box No. 6. He stated that he had given no authorization or instruction for the collector to serve a notice on customs Form 4301 by placing the form in the box, but that the foregoing procedure was the accepted practice and that he had made no objection to the use of the box.

J. William Rilea, a clerk with Davies, Turner & Co., stated that, after the liquidation figures were prepared, they still had not received the notice of appraisement; but that he later learned from the customhouse that there was on

file a copy of a notice of appraisement dated April 25, 1962, and he made a notation of this date in the margin of copies of the papers (exhibits 1, 2, and 3) that were sent to A. H. Wirz, Inc., the real party in interest, informing it of the liquidation.

Marvin Samson, a clerk-typist in the liquidating section of the collector's office at the port of Philadelphia, testified that he prepared from 25 to 75 notices each week, dated them for the succeeding Wednesday, attached them to the invoices of each broker, and placed them in the broker's boxes on the date that appeared on the notices. He kept a copy of the notice, but did not make any other record of having delivered the notice.

Paul B. Le Compte, protest review liquidator in the office of the collector, and supervisor of the work of Marvin Samson, testified that the procedure followed by Marvin Samson was the practice on April 25, 1962, but that the practice has been changed to mailing the notices of appraisement.

The question of whether the deposit of notices of appraisement in receptacles maintained in the collector's office for use by persons to whom such notices are directed constitutes personal delivery of such notice has been before the court on several occasions. In Clayburgh Bros. v. United States, 65 Treas. Dec. 1636, Reap. Dec. 3262, the court determined the issue to be one of fact and, upon the evidence presented, concluded that notice had not been given. In R. W. Smith et al. v. United States, 55 Cust.Ct. 216, C.D. 2578, decided October 4, 1965, the court concluded that notice of appraisement had not been given by means of the placement of the notice in the broker's box in the customhouse. In Charles M. Schayer v. United States, 56 Cust.Ct. ——, C.D. 2614, decided February 2, 1966, the court concluded that notice of appraisement had not been given by means of the placement of the notice in a folder with the broker's name on it in the customhouse.

In each of these two cases, one of the two judges resolved the issue as a matter of law, and the other judge resolved the issue as a matter of fact.

The practice in this case did not constitute a personal delivery in conformity with the statute and Customs Regulations, and the court should not accommodate its decision to an accepted practice at variance with the requirements of the statute and regulations.

In Webster's New International Dictionary (2d ed., 1958), the words "personal" and "delivery" are defined as:

> personal * * * 2.a Done in person, without the intervention of another; direct from one person to another; as, a *personal* inquiry; * * * b Carried on between individuals directly.

> delivery * * * 2. Act of delivering up or over; surrender; transfer of the body or substance of a thing.

The word "personal" relates to an act done in person without the intervention of another. Prete et al. v. Finkelstein et al., 193 Misc. 24, 83 N.Y.S.2d 353. To "deliver" is to give or transfer, to yield possession or control of, to hand over; it is the physical act of transferring possession, and it implies a change of custody and necessitates transfer of possession. Koval v. Liquor Control Commission, 149 Conn. 63, 175 A.2d 358. The Secretary of the Treasury, in making uniform the practice of collectors of customs in giving notice of appraisement by means of personal delivery, has placed the same interpretation upon the statutory words "personal delivery." Section 17.6 of the Customs Manual states in part:

> (c) The personal delivery to the importer of record, his agent or attorney of an original notice of appraisement shall be accompanied by the concurrent release to the deliverer of the recipient's signed receipt overprinted, impressed by rubber stamp, typed or otherwise endorsed on the retained

382

duplicate of customs Form 4301 as follows:

I hereby receipt for the personal delivery to me on ....................
(date)

of the original notice of appraisement issued for the entry identified in this duplicate.

..........................
(Signature, title)

(d) Any unavoidable departure from the prescribed . . . personal delivery routine[s] shall be made a matter of record on the retailed [sic] duplicate of customs Form 4301 by means of a brief explanation signed by the employee who knows as fact that the notice was * * * delivered, * * *.

The foregoing authorities compel the conclusion that "personal delivery" of a thing requires a physical transfer of such thing from one person to another.

■ The defendant has failed to discharge its burden of proving that notice of appraisement was personally delivered to the plaintiff. The appraisement is, therefore, incomplete, and the ensuing liquidation based thereon is invalid.

Pursuant to the provisions of 28 U.S. C.A., section 2636(d), the matter is remanded to a single judge of this court to determine the proper dutiable value of the involved merchandise in the manner provided by law.

Judgment will be entered accordingly.

DONLON, Judge:

I concur in the result, as I did in Charles M. Schayer v. United States, 56 Cust.Ct. ——, C.D. 2614, cited by my colleague, on the facts of record. Weighing the testimony, it is evident that defendant's clerk, charged with responsibility for delivery of the form 4301 to plaintiff, has no recollection of having personally placed it in the receptacle plaintiff maintained for that purpose, nor did he make any record of such delivery.

On the evidentiary record, I concur in the result.