(C.D. 4359)

Sanford Steel Pipe Products Co. *v.* United States

---

[1] Tariff Classification Study, Schedule 6, page 325.

United States Customs Court, Third Division

(Decided June 23, 1972)

*Allerton deC. Tompkins* for the plaintiff.

*Harlington Wood, Jr.,* Acting Assistant Attorney General (*James Caffentzis* and *Bernard J. Babb,* trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The merchandise of this protest consists of forged steel welding fittings exported from West Germany, entered at Chicago, Ill., on August 30, 1966, and advanced in value upon appraisement. It is claimed in the protest filed herein following liquidation of the entry that liquidation is premature, illegal, null and void by reason of the fact that notice of appraisement was not given to the consignee, his agent, or his attorney in accordance with section 501(a) of the Tariff Act of 1930, as amended (19 U.S.C.A., section 1501(a)).[1] At the trial held in Chicago on June 11, 1970, plaintiff's counsel advanced the alternative claim that liquidation herein is invalid because a valid reappraisement appeal had been filed (and was presumably still pending).

Evidence was introduced at the trial in support of the alternative claim by plaintiff that notice of a *proposed action* to increase duties sent to plaintiff on Customs Form 5555, pursuant to section 8.29 of the Customs Regulations, and dated June 20, 1967, constituted a notice

---

[1] The relevant portions of section 1501(a) read: The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value, or (3) in any case, if the consignee, his agent, or his attorney requests such notice in writing before appraisement, setting forth a substantial reason for requesting the notice. The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed . . . by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. . . .

of appraisement. Plaintiff through his agent, responded by requesting relief under "paragraph 520–C." The issue was briefed by the parties, but this alternative claim is not before the court, and, therefore, cannot be considered by the court. The alternative claim should have been made the subject of the protest (or an amendment to the protest), as was done by plaintiff in the companion case tried the same day. See *Sanford Steel Pipe Products Co.* v. *United States*, 68 Cust. Ct. 113, C.D. 4346, 339 F. Supp. 1273, decided March 24, 1972. It is well settled that a protestant is confined to the claims made in his protest. *United States* v. *Jacobson & Sons, Co.*, 10 Ct. Cust. Appls. 191, 193, T.D. 38551 (1920).

With respect to the protest claim of failure to give notice of appraisement, the testimony of Henry Kloch, import manager for International Expediters, Inc. of Chicago from October 1966 to June 1968, is pertinent. According to the official papers received in evidence International Expediters was the consignee of the subject merchandise who made entry in its own name. And the official papers contain a copy of a purported notice of appraisement on Customs Form 4301, addressed to International Expediters at 407 S. Dearborn St., Chicago, Illinois 60605 (the same address appearing on the face of the entry), signed by Heinz L. Herz, District Director of Customs, and displaying the initials ENL with date of mailing stamped SEP 11, 1967.[2]

Mr. Kloch testified that he was appointed to receive incoming mail concerning imports handled by International Expediters during a period which included September – October 1967, that all incoming mail was directed to his desk, that the procedure set up in the office for handling incoming notices of appraisement consisted of his getting the original 4301, photocopying it and sending the photocopy with his company's representative to the customhouse to copy the appraisement information, and, under standard procedure, sending the photocopy of the 4301 form with a covering letter to the importer asking if he wanted his company to appeal for a reappraisement. And after giving certain testimony as to follow-up procedures, the witness Kloch testified that his office did not receive a notice on form 4301 for entry 8237 on or about September 12, 1967, and that his company's files have no record of having received it. The witness also stated that on occasion during the year 1967 International Expediters had received 4301 forms addressed to International Importers, Inc., with which import-

---

[2] 19 CFR 17.6 in effect on September 11, 1967, required: The collector at the headquarters port, or the deputy collector in charge at any other port, shall promptly give notice of appraisement on customs Form 4301 when such notice is required by section 501, Tariff Act of 1930, as amended. The notice shall be prepared in duplicate and the retained copy, with the date of mailing or delivery noted thereon, shall be securely attached to the invoice.

ing firm they have no connection, and that International Importers had received 4301 forms addressed to International Expediters. On cross-examination of the witness on this point, it was brought out that in all cases where the 4301 forms had been misdirected as aforesaid, they had been redirected and forwarded to the proper addressee. (R.52)

Also on cross-examination the witness Kloch testified that a girl was employed in International Expediter's mailroom to open the mail and to bring the opened mail to him, that some of the mail received in the mailroom would also be directed to the export manager's desk, and that on occasion he would receive some of the export manager's mail and the export manager would receive some of his mail. Plaintiff rested on this phase of the case after the testimony of the witness Kloch.

Defendant adduced the testimony of two witnesses with a view toward establishing that notice of appraisement was given to the consignee International Expediters on or about September 11, 1967. But the primary question in the case involves the sufficiency of the evidence presented by plaintiff of the non-delivery of the notice of appraisement—a presumption of regularity concerning the district director's actions arising from the instant record.

On the basis of the evidence adduced by plaintiff, the court is of the opinion that plaintiff has failed to establish *prima facie* the non-delivery of notice of appraisement covering entry 8237, the entry involved in this case. At best, plaintiff's evidence indicates that the secondary recipient of such notice in the normal course of events, namely, the witness Kloch, did not receive the notice. There is no evidence that the notice in question was not in fact received by the primary recipient of it in the normal course of events, namely, the girl employed in International Expediter's mailroom for that purpose, and that it was not misdirected by her after its receipt. Neither the mailroom girl nor the export manager, who sometimes got mail destined for the import manager, was called as a witness in the case, and their non-appearance as witnesses in the case remains unexplained.

Neither the rule of "regularity" nor the proofs offered by plaintiff cast upon defendant the burden of defending the district director's actions in the case. *Cf. Charles M. Schayer* v. *United States,* 56 Cust. Ct. 79, C.D. 2614 (1966).

Plaintiff also contends in the brief that at the time the notice of appraisement at issue was given the offices of collector of customs and appraiser had been abolished, and there was at that time no statutory authority for anyone else to act in their places, citing Customs Reorganization Plan No. 1 of 1965 (30 F.R. 7035) and Treasury Department Order No. 165-17 (100 Treas. Dec. 381, T.D. 56464). Presumably,

the effect of this contention, if valid, would be to void the proceedings taken in connection with the subject entry during this period—there being no basis for a literal compliance with section 501(a) in view of such changes.

We find no merit in plaintiff's contention. As defendant's counsel aptly points out in the brief (defendant's brief, pages 15–17) both the abolition of the offices of collector and appraiser and the creation of the substitute office of district director were accomplished pursuant to the Reorganization Act of 1949 (63 Stat. 203) and various reorganization plans and Treasury Department orders adopted and issued thereunder. See Reorganization Plan No. 26 of 1950 (64 Stat. 1280–1281) ; Treasury Department Order No. 165, Revised (89 Treas. Dec. 334, T.D. 53654 (1954)) ; Reorganization Plan No. 1 of 1965 (79 Stat. 1317). Congress was aware of the state of the customs laws when it enacted the Reorganization Act of 1949, and of the impact which the remedial measures authorized thereby would have on such laws upon their subsequent implementation. Consequently, as part of the Act, Congress inserted a "savings" clause which, insofar as is here material, reads:

Sec. 9. (a) (1) Any statute enacted . . . before the effective date of such reorganization, shall, except to the extent rescinded, modified, superseded, or made inapplicable by or under authority of law or by the abolition of a function, have the same effect as if such reorganization had not been made; but where any such statute . . . has vested the function in the agency from which it is removed under the plan, such function shall, insofar as it is to be exercised after the plan becomes effective, be considered as vested in the agency under which the function is placed by the plan.

This savings clause arrangement was looked upon by Congress as being more expedient than the series of statutory amendments which would otherwise have been necessary to effectuate the desired broad scale reorganizations. See section 2(b) of the Act [63 Stat. 203].

Since the district director at the port of entry here involved succeeded to the functions previously performed at that port by the collector and appraiser following implementation of the reorganization plans provided for in the Act, the savings clause in section 9 of the Act furnishes ample statutory authority for regarding section 501(a) as being applicable to the district director during the period here involved, and for treating the words "collector" and "appraiser" in the statute as being merely "directory" as of that time, and we so hold.

It follows from the foregoing that the protest herein must be overruled; and judgment will be entered accordingly.