(C.D. 2217)

ARNOLD, SCHWINN & Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 14, 1960)

*MacLeish, Spray, Price & Underwood* (*James G. Hiering* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Richard H. Welsh* and *Margaret M. Vallerie,* trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

RICHARDSON, Judge: In these 17 consolidated protest cases, we are called upon to determine whether the collector of customs failed to give notice of the appraisement of certain imported merchandise to the consignee, his agent, or his attorney, as required by 19 U.S.C.A., section 1501(a) (section 501(a), Tariff Act of 1930), as amended, which reads in pertinent part as follows:

The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered

value, . . . . The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is . . . filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. . . .

The merchandise herein consists of 17 importations of bicycle parts imported into the United States from West Germany and entered at the port of Chicago by Davies, Turner & Co., a customs brokerage firm acting on behalf of Arnold, Schwinn & Co., the plaintiff. The bicycle parts in each case were appraised by the appraiser at values higher than the values at which the importer entered them. No appeals for reappraisement were taken, and, subsequent to the expiration of the 30-day statutory period, the entries covering the involved merchandise were liquidated by the collector on the basis of the values as found by the appraiser.

In this action, plaintiff attacks the validity of the liquidation of these entries. Plaintiff claims, and it appears to be conceded by the defendant, that the collector is required, under the provisions of section 1501, *supra*, to give written notice of appraisement to the consignee, his agent, or his attorney in each of the consolidated cases, if the appraised value of the merchandise is higher than the entered value. Plaintiff maintains that notice of appraisement was not given in any of the cases, and that, as a result, plaintiff has been denied its day in court as to the value of the instant merchandise. Plaintiff further maintains that the alleged failure of the collector to comply with the notice requirement of the statute renders both the appraisements of the involved bicycle parts, and the liquidations based thereon, invalid.

On the other hand, defendant contends that notices of appraisement were given in compliance with the statute, and plaintiff's assertion that it was deprived of the opportunity to appeal for reappraisement of the subject merchandise is, therefore, without merit.

In support of its claim that notices were not given in these cases, plaintiff introduced the testimony of two witnesses.

Plaintiff's first witness was John H. Plattner, a customs broker, who is in charge of the Davies, Turner office in Chicago. According to the testimony given by this witness, his firm, as customs broker for plaintiff, receives through the mail from the office of the collector of customs, notices of appraisement of merchandise imported by plaintiff. In the usual course of business, the witness opens all mail sent to his office by the customs authorities. Each notice of appraisement received by his firm, together with a letter of transmittal, is forwarded to the importer, but a copy of the transmittal letter is retained in the broker's files.

The Davies, Turner files relating to the entries involved in these protests were subjected to several searches in an effort to determine whether notices of appraisement of the merchandise covered thereby had been received. One such search was conducted by the witness, another by a customs agent, together with the witness, and a third search of some, but not all, of the files was made by the witness and a Mr. Keck from the office of counsel for the plaintiff. To the witness' knowledge, none of these searches yielded any record of receipt of notices of appraisement.

On cross-examination, the witness stated that he could not say of his own knowledge that the controverted notices of appraisement had not been received by his office, but was dependent on the office records for such a determination.

The next witness, plaintiff's import-export manager, testified that he receives and opens all mail relating to customs matters. His duty is to keep on file either a copy of each notice of appraisement received or a copy of the covering letter transmitting the notice to the company's attorneys. He stated that he made several searches of the pertinent files and that the searches failed to reveal any evidence of receipt of notices of appraisement with respect to the entries before the court.

Defendant maintains that notices of appraisement were mailed in these cases, and, in proof thereof, introduced the testimony of Kenneth A. Overmyer, who was deputy collector and chief liquidator at the time the instant entries were processed. He testified that the official file for each of the involved entries contains a notice of appraisement, which was prepared by a clerk under his personal supervision. He stated that he checked each notice for accuracy as to the importer of record, date of entry, entry number, and the address of the consignee, Davies, Turner & Co. He then signed the original notice and initialed the duplicate copy. The witness further stated that he personally placed the original notice in connection with each of the involved entries in an official franked envelope directed to Davies, Turner's address in the city of Chicago and deposited each of them in the United States mail.

When asked how he knew that he personally mailed these notices of appraisement, the witness explained that, in 1957, he inaugurated a new system of mailing such notices. Under the new system, the person who signs the notices of appraisement also deposits them in the mail chute. He then returns to his desk, stamps the duplicate copies with the date of mailing, and initials the date. This procedure has been invariably followed since April 3, 1957. The witness testified that he personally deposited the notices in the mails. He said that his initials appear twice on each of the copies of the notices of appraise-

ment in the official files, indicating that he signed the original, and that he mailed it on the date stamped thereon. The duplicate copies referred to were not offered in evidence by either party, but plaintiff acknowledges their presence in the files. The existence of these copies, bearing, as they do, the dates of mailing and the initials of the witness, is a circumstance which tends to corroborate the testimony of the defendant's witness that the established practice of his office with regard to the mailing of notices of appraisement was adhered to in the specific instances under consideration.

Defendant has established by proof, which we find convincing, that notices of appraisement of the instant merchandise, enclosed in franked envelopes, properly addressed to the noticee, were deposited in the United States mail.

It is a universally recognized rule that a presumption of due delivery and receipt arises upon proof that a letter or other communication, properly addressed, with sufficient postage prepaid thereon, was deposited in the United States mail. This presumption of delivery and receipt is said to be "a strong one," *Crude Oil Corporation of America* v. *Commissioner of Internal Revenue*, 161 F. 2d 809, 810, and, although rebuttable, it is not easily overcome. *The Borden Company* v. *United States*, 134 F. Supp. 387; *Arkansas Motor Coaches, Limited, Inc.* v. *Commissioner of Internal Revenue*, 198 F. 2d 189.

Hence, there exists a presumption that the addressee, Davies, Turner & Co., received the 17 controverted notices of appraisement. This normally strong presumption is further strengthened by the fact that, as plaintiff points out in its brief, the duplicate copies purport to show that the original notices were mailed on 4 different days over a 9-day period. Thus, any inference that they miscarried in the mail and were not delivered, must, by force of circumstances, be a very weak one indeed, for, as plaintiff concedes, it is extremely unlikely that the postal service lost "four different groups of letters mailed on four different days." The showing that searches of the pertinent files in the office of the broker, to whom the collector says he sent the notices of appraisement for the plaintiff, and in the office of the plaintiff, to whom notices were not sent by the collector, failed to reveal any record that said notices had been received is a purely negative circumstance; and, in our opinion, is not sufficient to rebut the presumption of delivery, in view of the facts herein. The supervisory employee of the addressee, who testified for plaintiff, stated, on cross-examination, that he did not do the filing in his office, and could not answer for the two or three people who performed that duty. He admitted that misfiling occurs every day and could have taken place in connection with the involved notices. The record is silent on the question as to who did the actual filing in the office of the plaintiff.

The cases involving notices of appraisement which are cited and relied on by plaintiff are distinguishable from the instant cases.

In *Clayton Chemical & Packaging Co.* v. *United States*, 38 Cust. Ct. 617, Reap. Dec. 8774, the record was devoid of any evidence either as to the customs and usage of the collector's office with regard to the mailing of notices of appraisement or of the actual fact of mailing.

The notice of appraisement involved in *Clayburgh Bros.* v. *United States*, 65 Treas. Dec. 1636, Reap. Dec. 3262, was allegedly delivered by a Government employee to a box maintained in the customhouse for brokers, and involved a question of personal delivery.

In *Nippon Dry Goods Co.* v. *United States*, 11 Cust. Ct. 433, Reap. Dec. 5940, affirmed in *United States* v. *Nippon Dry Goods Co.*, 13 Cust. Ct. 373, Reap. Dec. 6054, it was shown by the evidence that the established practice was not adhered to in all respects and a pertinent customs regulation was not observed in connection with the mailing of the notice of appraisement. Due to these circumstances, the court held that the presumption in favor of the regularity of the employee's action in mailing the notice of appraisement fell.

The cases of *United States* v. *Tampa Box Co.*, 15 Ct. Cust. Appls. 360, T.D. 42561, and *United States* v. *James H. Rhodes & Co.*, 40 C.C.P.A. (Customs) 1, C.A.D. 488, also differ from the instant cases, in that it was agreed by the parties concerned that no notices of appraisement were given to the consignee, his agent, or attorney.

Plaintiff places great reliance upon the case of *Alfred Dunhill of London, Inc.* v. *United States*, 22 Cust. Ct. 209, C.D. 1178. The issue there was the same as the issue in the instant cases. In the *Dunhill* case "None of the witnesses was able to state his own recollection of the exact events." The testimony on both sides was based upon records which gave "almost equal support to inconsistent inferences." (22 Cust. Ct. 209, 212.) In the instant case, the witness for the defendant, Mr. Overmyer, stated positively that he personally deposited each of the notices of appraisement in the mails (R. 33 and 34).

A further difference lies in the fact that only *one notice* of appraisement was involved in the cited case, whereas the instant cases involve *17* such notices mailed on 4 different days over a 9-day period, and an inference that they were lost in the mail and not delivered would be opposed to the probabilities and could not support a finding of nonreceipt.

It is our considered opinion that plaintiff has not overcome by sufficient countervailing evidence, the rebuttable presumption of delivery and receipt raised by the positive proof of mailing of the involved notices, and we so find. Therefore, we must conclude that said notices were received by the addressee, the customs brokerage firm who en-

tered the merchandise for the plaintiff. Hence, it follows that plaintiff's other claims, namely, that the appraisements and liquidations of the subject merchandise are invalid, and that plaintiff has been denied its day in court as to the value of the merchandise, based as they are upon the theory of lack of notice of appraisement, are without merit.

For the reasons given, the protests are overruled. Judgment will be entered accordingly.