(C.D. 2742)

INTERNATIONAL IMPORTERS, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided August 4, 1966)

*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Harvey A. Isaacs*, trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges

RICHARDSON, Judge: The two consolidated protests at bar relate to merchandise entered at the port of Chicago, Ill., in 1960. The merchandise consisting of radios with accompanying parts and/or accessories was advanced in value upon appraisement, no appeal for reappraisement was filed within the 30-day statutory period and, subsequently, the entry was liquidated.

Plaintiff claims that the liquidations are premature in that no notice of appraisement (Customs Form 4301) as required by 19 U.S.C., section 1501(a) (section 501(a), Tariff Act of 1930), as amended, was mailed. The defendant maintains that a notice of appraisement for the two involved importations was duly given by mail in accordance with law.

Section 1501 (a) reads as follows:

§ 1501. Notice of appraisement; reappraisement

(a) The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value, or (3) in any case, if the consignee, his agent, or his attorney requests such notice in writing before appraisement, setting forth a substantial reason for requesting the notice. The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the United States Customs Court.

The evidence presented in the record negates any factual determination that the notices of appraisement were personally delivered to the plaintiff or his agent or attorney, or that they were mailed to said agent or attorney, leaving for determination the narrow issue as to whether or not there was circumstantial evidence that the collector of customs mailed a notice of appraisement as required by section 1501, *supra*.

Plaintiff, to support its claim, introduced the testimony of George A. Rubinstein, vice president of International Importers, Inc. Mr. Rubinstein has been associated with the plaintiff company since 1957, when it was incorporated. He is in charge of imports in all its phases and maintains, under his supervision, various records, including a log wherein each shipment is separately logged, in a detailed chronological order, from the time notice is received that an importation is being delivered until liquidation. The receipt of a notice of appraisement, of which he is familiar, would be entered in the log.

When asked to describe the office procedure relating to the opening of mail containing customs documents, he testified that all mail addressed to International Importers is first opened by his secretary, except that when she is absent or on vacation, the witness personally opens the mail. Mail destined for other individuals in the organization is distributed, the witness or his secretary retaining the customs documents for further action.

He further stated that this is the established and invariable practice since 1957, and that he never received a notice of appraisement in connection with the entries at bar.

It was further developed on cross-examination that initially the mail is received each morning by a mail clerk who separates the mail

designated for International Importers from that addressed to the Sampson Co., an associated organization. The mail destined for International Importers is placed unopened upon the secretary's desk. The witness admitted that it is possible that mail might be misdirected under this preliminary step, but in any event, it would inevitably be brought to him.

On several occasions relating to other entries, the witness has received with his notice of appraisement other documents. He recalled one such incident in February of 1963, wherein he had received along with a notice of appraisement intended for him, a notice of appraisement addressed to International Expediters, Inc. Upon its receipt, the witness forwarded it to the proper addressee with an accompanying cover letter. A copy of the erroneously sent notice of appraisement and the witness' cover letter were received into evidence as plaintiff's collective illustrative exhibit 1.

The witness further testified that in May 1961, he received a notice of appraisement from Florida in an envelope of the International Food Distributors Co. The envelope was received in evidence as plaintiff's illustrative exhibit 2.

To support its contention that the notices of appraisement were duly mailed, the defendant offered the testimony of three witnesses and introduced into evidence without being marked the official papers in the involved protests.

Defendant's first witness, John McDonnell, chief of entry liquidations in the office of the collector of customs in Chicago, Ill., testified that, during the pertinent period involved herein, he was deputy collector in charge of the liquidating section of the entry liquidating division and was responsible for the preparation and mailing of notices of appraisement. He stated that, with respect to notices of appraisement, it was the invariable procedure to put to one side those invoices marked by the appraiser as "Advanced." Thereupon, a file clerk (under his supervision) prepares a notice of appraisement (Customs Form 4301) in duplicate, the original, after review, being signed by McDonnell and the duplicate being initialed. McDonnell personally returns the original and duplicate to the file clerk who affixes the date, separates the original for mailing, and staples the duplicate to the invoice. The file clerk puts the original into a window envelope and deposits it in the mail chute situated in the building. The clerk then stamps the duplicate "Original mailed" followed by his initials and the date of mailing.

After recognizing the duplicate notices of appraisement appearing in the official papers of the protests at bar, he identified his initials appearing in said forms and stated that it signifies his review and signing of the originals. He further identified the initials of Nicholas

Brady and John Low, which appear in the duplicates under the aforementioned stamped phrase and date. Brady and Low, whose testimony was also elicited at trial, *infra*, were the file clerks who under McDonnell's supervision had allegedly prepared and mailed the involved notices.

The witness had no specific recollection with regard to the entries at bar, nor did he observe Brady or Low mail the disputed notices of appraisement. He denied the existence of any instructions with respect to placing more than one notice of appraisement in an envelope, but in answer to a number of questions directed from the bench, he stated that it was authorized procedure to mail more than one notice of appraisement in the same envelope, and was aware of the fact that some of the notices of appraisement were going astray because the importer, in preparing the entry papers, has occasionally given an erroneous address.

The file clerks, Brady and Low, gave similar testimony with respect to the established procedure involved in the preparation and mailing of notices of appraisement. Brady identified his initials appearing in the duplicate notice of appraisement in protest 61/6160 and indicated that it signified that he personally placed the original in the mail. Low also identified his initials appearing in the duplicate notice of appraisement in protest 63/6950 which indicated that he had personally mailed the original. Both witnesses stated that it was their invariable practice to mail the originals in the manner described.

Neither Brady nor Low had any specific recollection with respect to the particular notices at bar. In connection with the possibility of several notices of appraisement being placed in the same envelope, Brady testified that, on one occasion, he inserted more than one notice in an envelope where they were addressed to the same party. He felt that there was little possibility of his inadvertently inserting a notice of appraisement intended for another importer in the same envelope when engaged in this practice. Low, on the other hand, stated that he always placed one notice of appraisement in an envelope.

The evidence presented by the plaintiff, if given full credence, sufficiently establishes that notices of appraisement affecting the involved entries were not received by the plaintiff. Likewise, the evidence proferred by the defendant, if given full credence, sufficiently establishes that notices of appraisement affecting the subject entries were mailed to the plaintiff. The proofs lead the court to mutually inconsistent conclusions. And it is to be noted that none of the witnesses from whom the testimony comes possess any independent recollection of the involved transactions. The testimony as to nonreceipt of the involved notices as well as that concerning the mailing of the notices is circumstantial and dependent upon records kept by the witnesses.

The instant case is in the same posture as the case of *Alfred Dunhill of London, Inc.* v. *United States*, 22 Cust. Ct. 209, C.D. 1178, wherein the same issue which is before this court was there raised. In the *Dunhill* case, testimony given by the importer's comptroller and an employee of the customs broker was to the effect that an original notice of appraisement had not been received, and testimony given by a clerk in the liquidating division of the collector's office who was in charge of sending out notices of appraisement was to the effect that he had personally mailed the original of the notice to the importer. Neither of the witnesses, however, had any recollection with respect to the particular notice in question, either as to its receipt or as to its mailing. The court held that the appraisement was incomplete and that the liquidation based thereon was premature. In reaching this conclusion, the court there stated (p. 212):

None of the witnesses was able to state his own recollection of the exact events. Most of the testimony was based upon records and practices in effect at the time the incidents took place. The testimony may be summarized as follows: The records of the plaintiff show that the notice of appraisement was not received, whereas the Government records show that the same was mailed. The plaintiff herein, having the burden of proof, is required at the outset to give competent evidence of the truth of its averments. This it has done. The defendant, assuming the burden of going forward with evidence, countered with testimony that it had performed all the acts necessary to advise plaintiff of the appraisement. But, as stated above, the testimony on both sides was based upon records rather than on exact recollections of the events themselves and gives almost equal support to inconsistent inferences.

Upon this state of the record we think the ends of justice will best be served by a finding that the plaintiff failed to receive a notice of appraisement as contemplated by the statute and was therefore deprived of its right of appeal. While we do not mean to be understood as holding that the statute requires that the collector must ensure that the notice of appraisement reach the importer or his agent, the circumstances of this case raise a reasonable doubt as to whether the notice, through no fault or neglect on the part of the customs officials, ever reached the importer.

The facts and circumstances in the instant case are parallel to those in the *Dunhill* case, in our opinion. And for the same reasons mentioned by the court in that case, we think a reasonable doubt exists under the evidence at bar that the questioned notices of appraisement were ever received by the plaintiff. In reaching this conclusion, we are not unmindful of the authorities to which our attention has been drawn in the brief of government counsel, particularly the case of *Arnold, Schwinn & Co.* v. *United States*, 45 Cust. Ct. 156, C.D. 2217. We believe, however, the facts of the instant case to be clearly distinguishable from those in the *Schwinn* case (which involved the improbability

of 17 notices going astray and did not involve evidence of misdirection of notices by the collector) and the other cases cited, and to be more in accord with the facts in the *Dunhill* case. Therefore, upon the basis of the evidence at bar and upon the authority of *Alfred Dunhill of London, Inc.* v. *United States, supra*, we hold that the involved appraisements were incomplete and invalid and that the liquidations based thereon were premature and invalid. Pursuant to the provisions of 28 U.S.C.A., section 2636(d), the matters are remanded to a single judge of this court to determine the proper dutiable value of the involved merchandise in the manner provided by law.

Judgment will be entered accordingly.