UNITED STATES *v.* INTERNATIONAL IMPORTERS, INC. (No. 5274)*

*C.A.D. 932

United States Court of Customs and Patent Appeals, February 15, 1968

*Barefoot Sanders*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Dominick M. Minerva* for the United States.

*Sharretts, Paley, Carter & Blauvelt* (*Howard Clare Carter*, of counsel) for appellee.
[Oral argument October 3, 1967 by Mr. Vance and Mr. Carter]

Before WORLEY, Chief Judge, and Judges RICH, SMITH, ALMOND, JONES**

SMITH, Judge, delivered the opinion of the court:

The central issue involved in this appeal is whether the statutory requirement that the collector "shall give written notice" of appraisement was satisfied, within the requirements of section 501 of the Tariff Act of 1930, as amended.[1]

The issue arises in an appeal by the United States, defendant below, from the decision and judgment of the United States Customs Court, Third Division,[2] sustaining the consolidated protests of the importer with respect to the liquidation of duties on two importations of radios, entered at the port of Chicago, Illinois, on March 4, 1960 and Novem-

---

**Senior Judge, United States Court of Claims, sitting by designation.

[1] 46 Stat. 730, 19 U.S.C. 1501, as amended, 52 Stat. 1084 (Act of June 25, 1938), 62 Stat 990, 992 (Act of June 25, 1948), and 67 Stat. 517 (Act of August 8, 1953).

[2] *International Importers, Inc.* v. *United States*, 57 Cust. Ct. 134, C.D. 2742 (1966).

ber 2, 1960. The merchandise has been appraised at values higher than the entered values, no appeal for reappraisement was filed, and the entries were subsequently liquidated.

We are here concerned with section 501 of the Tariff Act of 1930, as amended, and with the Customs Regulations related to it. This section provides:

The collector *shall give written notice of appraisement to the consignee, his agent, or his attorney,* if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value, or (3) in any case, if the consignee, his agent, or his attorney requests such notice in writing before appraisement, setting forth a substantial reason for requesting the notice. The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the United States Customs Court. [Emphasis added.]

Section 17.6 of the Customs Regulations [3] provides:

NOTICE OF ADVANCE.—The collector at the headquarters port, or the deputy collector in charge at any other port, *shall promptly give notice of appraisement* on customs Form 4301 when such notice is required by section 501, Tariff Act of 1930, as amended. The notice shall be prepared in duplicate and the retained copy, with the date of mailing or delivery noted thereon, shall be securely attached to the invoice. [Emphasis added.]

As plaintiff below, appellee asserted that the liquidations were premature, and, hence, null and void, for the reason that no written notice of appraisement (Customs Form 4301) was given as required by section 501 of the Tariff Act of 1930, as amended. The Government position was that written notices of appraisement for the two importations involved were mailed and hence that notice had been "given" as required by section 501 as amended.

The Customs Court held that the involved appraisements were incomplete and invalid and that the liquidations based on these appraisements were premature and invalid, on the authority of *Alfred Dunhill of London, Inc.* v. *United States*, 22 Cust. Ct. 209, C.D. 1178 (1949). In reaching its conclusion, the court believed that the facts of this case were "clearly distinguishable" from the facts in *Arnold, Schwinn & Co.* v. *United States*, 45 Cust. Ct. 156, C.D. 2217 (1960) in that *Schwinn* involved the improbability of seventeen notices of appraisement going astray. Also, the record there did not involve any evidence

---

[3] 19 C.F.R., § 17.6.

of misdirection of appraisement notices, as was here developed by appellee. Thus, Judge Richardson considered the facts and circumstances in the instant case to be "parallel" to those in *Dunhill* and distinguishable from those in *Schwinn*.

In resolving the issue here presented, we are governed directly by the statute. This statute must be construed *as a whole* and full force and effect given to all of the language included in it, see *Carey & Skinner, Inc.* v. *United States*, 42 CCPA 86, 89, C.A.D. 576 (1954).

The particular portion of the statute which governs our decision here was added to section 501 of the Tariff Act of 1930. The Report to Accompany H.R. 2667, H.R. Rep. No. 7, 71st Cong., 1st Sess. 175 (1929) states the reason for the addition:

> The 1922 Act contains no direct provision for notice to the consignee of changes in value made by the appraiser upon appraisement. There has, therefore, been added to this section a specific requirement for such notice in any case in which the change in value might be prejudicial to the importer.

Thus, the pertinent section of the statute clearly requires that the "collector *shall give written notice* of appraisement" to the enumerated persons.

In applying the statute, we turn first to the *ways* in which the statute provides that "notice" may be "given" by the collector. We need go no further than the express statutory language to determine that *this* statute contemplates "personal delivery" and "mailing" as the modes by which compliance with the *mandates* of the statute may be effected. Cf. *Orlex Dyes & Chemicals Corp.* v. *United States*, 41 Cust. Ct. 168, 169, C.D. 2036 (1958) ; *Clayton Chemical and Packaging Co.* v. *United States*, 38 Cust. Ct. 617, 619, Reap. Dec. 8774 (1957).

 The statute thus provides at least two options, or routes for giving notice, either one of which the collector may elect to use. We do not think, however, that statutory mention of these optional modes of compliance with the manner by which *notice may be given* is necessarily dispositive of the *fact* that the requirement of the statute that *notice shall be given* has been met.

Thus, the collector has the choice of complying with the statute by personal service *or* by mailing. We deal here only with the question of whether proof or mailing alone, buttressed by the presumption that Government officials perform their duties in the manner required by law, constitutes a compliance with the statute.[4] *Olavarria & Co.* v.

---

[4] Where it is undisputed that a notice of appraisement was not "given" by the collector, this fact has the legal effect of voiding the appraiser's appraisement and rendering the collector's liquidation invalid. *United States* v. *James H. Rhodes & Co.*, 40 CCPA 1, C.A.D. 488 (1952), affirming *James H. Rhodes & Co.* v. *United States*, 26 Cust. Ct. 424, Abs. 55525 (1951) ; *United States* v. *Tampa Box Co.*, 15 Ct. Cust. App. 360, T.D. 42561 (1928) ; and *Peabody & Co.* v. *United States*, 12 Ct. Cust. App. 354, T.D. 40491 (1924). Similarly, where the notice of appraisement is substantively defective, any liquidation based upon such an

*United States*, 47 CCPA 65, C.A.D. 729 (1960); *United States* v. *Henry W. Peabody & Co.*, 40 CCPA 59, C.A.D. 498 (1952); *V. Mueller & Co.* v *United States*, 28 CCPA 249, C.A.D. 152 (1940); *Astra Trading Corp.* v. *United States*, 52 Cust. Ct. 31, C.D. 2430 (1964). ▮ We recognize the rebuttable presumption that a letter or other communication which is properly sealed, stamped with sufficient postage prepaid or franked, properly addressed and deposited in the United States Mail will be delivered to the addressee and be received by him in due course of the mails. See *Charlson Realty Co.* v. *United States*, 384 F. 2d 434, (Ct. Cl. 1967) and cases cited therein, id at 442; *Arnold, Schwinn & Co.* v. *United States*, supra.

"Notice," as used in section 501, is not used as a technical term. As such it may have various meanings ascribed to it. As here used, its meaning is controlled by the context in which it is used and the purpose and intent of the statute. See 66 C.J.S. *Notice* §§ 1–8. As such, it should receive a reasonable interpretation with reference to the rights which the statute gives the importer to appeal from an increase in the appraised value of the imported merchandise. The legal requirement of "notice" in the sense of section 501 requires (1) a written communication from the collector of customs properly addressed to the importer which identifies the entry and advises the importer of the increased assessed valuation, and (2) a communication of that "notice" to the importer. The customs regulations are explicit concerning the form of the "notice" and those formal requirements appear to have been met here. The issue arises as to the second requirement. Section 501 authorizes the mailing of such "notice" to the importer.

The legal question here is whether proof of mailing by the collector meets the requirement in section 501 that "notice" be "given" to the importer of the increased appraisement of the entered merchandise.

Congress in providing for a written notice of an increase in appraisements under facts such as those here present, clearly intended that *express* notice be given to the importer. Such notice requires that the knowledge in the written notice be "brought personally home" to the importer. See 66 C.J.S. *Notice* § 4. To hold otherwise is to defeat the clearly expressed intent of Congress that the importer faced with an increase in appraised values should have a right to appeal from the increase in appraised value. The time in which such appeal must be taken is carefully limited by section 501 to 30 days after the date of mailing of the notice. This provision is internally inconsistent with

invalid appraisement is also invalid. See, e.g., *Philipp Bros. Chemicals, Inc.* v. *United States*, 51 Cust. Ct. 35, 222 F. Supp. 489, C.D. 2410 (1963). For recent examples of personal service or delivery as a compliance with the statute, see, e.g., *Davies, Turner & Co.* v. *United States*, 57 Cust. Ct. 55, C.D. 2724 (1966); *Charles M. Schayer* v. *United States*, 56 Cust. Ct. 79, C.D. 2614 (1966); and *R. W. Smith* v. *United States*, 55 Cust. Ct. 216, C.D. 2578 (1965).

the concept of the requirement of an express notice, except as a presumption is indulged that such notice arises from the act of mailing and the legal presumption that mail properly addressed and duly mailed will be received by the named recipient in the due course of the mails.

The general rule is that "notice to one at a specified place is not given until it is received by the person to be notified at the place specified." 66 C.J.S. *Notice* §§ 18(c)–(d) and cases there cited. As stated in *In re R. B. Rose Co.*, 43 F. 2d 446 (S.D.N.Y. 1930):

> In the absence of a provision authorizing it, a notice served by mail is ineffective unless it is received. But where notice has been properly mailed, its receipt will be presumed in the absence of evidence to the contrary. * * *

Where, as here, the statute authorizes mailing of the "notice," there is a risk that it may be lost or never delivered. However, as pointed out in *Creasy* v. *United States*, 4 F. Supp. 175 (D.C. Va. 1933):

> * * * This risk is slight, for experience shows that, with rare exceptions, mail matter is transmitted and delivered without loss or delay. The general efficiency of our postal system is such as that the mailing of a letter furnishes a presumption of its receipt. But this is only a presumption of fact of an evidentiary nature, which may be disproven by other evidence. And, if it be clearly and indisputably proven that a notice required to be given or a paper required to be filed had never reached or come to the attention of the person for whom it was intended, it cannot be said that the person required to give the notice or file the paper had filled the obligation imposed on him by utilizing certain methods which ordinarily would have resulted in fulfilling this obligation, but which on the particular occasion unquestionably did not. A person imposed with the duty of giving notice to another cannot be said to have fulfilled that duty when it is an established fact that the latter person never received the notice. * * *

The presumption of receipt of a mailed notice is a rebuttable presumption of fact. *Columbian Nat. Life Ins. Co.* v. *Rodgers*, 93 F. 2d 740 (10th Cir. 1937).

The rule as stated in *Crude Oil Corp.* v. *Commissioner*, 161 F. 2d 809 (10th Cir. 1947) is:

> When mail matter is properly addressed and deposited in the United States mails, with postage duly prepaid thereon, there is a rebuttable presumption of fact that it was received by the addressee in the ordinary course of mail. [Footnote omitted.]

In *Schutz* v. *Jordan*, 141 U.S. 213 (1891) the statement is:

> * * * So while the mailing of a letter creates an inference, raises a presumption that the party to whom it was addressed received it in due course of mail, and thus acquired knowledge of the matters stated therein, yet such presumption is one of fact, not of law. It is not conclusive, but subject to control and limitation by other facts. * * *

The pertinent antecedent authorities were considered by the Supreme

Court in *Henderson* v. *Carbondale Coal & Coke Co.*, 140 U.S. 25 (1891) after which it stated:

\* \* \* In 2 Wharton on Evidence, sec. 1323, the rule is thus stated: "The mailing a letter, properly addressed and stamped, to a person known to be doing business in a place where there is established a regular delivery of letters, is proof of the reception of the letter by the person to whom it is addressed. Such proof, however, is open to rebuttal, and ultimately the question of delivery will be decided on all the circumstances of the case." In support of this proposition many authorities are cited, among them the case of *Lindenberger* v. *Beall*, 6 Wheat. 104. In the case of *United States* v. *Babcock*, 3 Dillon, 571, 573, in which the question was elaborately discussed by counsel, Judge Dillon stated the law in these words: "Upon the subject of the admissibility of letters, by one person, addressed to another, by name, at his known post-office address, prepaid, and actually deposited in the post office, we concur, both of us, in the conclusion, adopting the language of Chief Justice Bieglow in *Comm.* v. *Jeffries*, 7 Allen, 548, 563, that this 'is evidence tending to show that they reached their destination, and were received by the persons to whom they were addressed.'" This is not a conclusive presumption, and it does not even create a legal presumption that such letters were actually received; it is evidence tending, if credited by the jury, to show the receipt of such letters;—"a fact," says Agnew, J., *Tanner* v. *Hughes*, 53 Penn. St. 290, "in connection with other circumstances, to be referred to the jury, under appropriate instructions, as its value will depend upon all the circumstances of the particular case." See also *Rosenthal* v. *Walker*, 111 U.S. 185. This presumption, which is not a presumption of law, but one of fact, is based on the proposition that the post office is a public agency charged with the duty of transmitting letters; and on the assumption that what ordinarily results from the transmission of a letter through the post office probably resulted in the given case. It is a probability resting on the custom of business and the presumption that the officers of the postal system discharged their duty. \* \* \*

The Supreme Court has stated in *Rosenthal* v. *Walker*, 111 U.S. 185 (1884) what we think must be the guiding principle to be applied here. As there stated:

The rule is well settled that if a letter properly directed is proved to have been either put into the post office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed. *Saunderson* v. *Judge*, 2 H. Bl. 509; *Woodcock* v. *Houldsworth*, 16 M. & W. 124; *Dunlop* v. *Higgins*, 1 H.L. Cas. 381; *Callan* v. *Gaylord*, 3 Watts. 321; *Starr* v. *Torrey*, 2 Zabr. 190; *Tanner* v. *Hughes*, 53 Penn. St. 289; *Howard* v. *Daly*, 61 N.Y. 362; *Huntley* v. *Whittier*, 105 Mass. 391. As was said by Gray, J., in the case last cited, "the presumption so arising is not a conclusive presumption of law, but a mere inference of fact founded on the probability that the officers of the government will do their duty and [sic] the usual course of business, and when it is opposed by evidence that the letters never were received, must be weighed with all the other circumstances of the case, by the jury in determining the question whether the letters were actually received or not."

Thus, ▮▮▮ the determinative issue here joined turns on the weight to be given to the evidence adduced below by appellee as rebutting, in this case, the inference of fact (or presumption) that a duly mailed

notice was received. The Customs Court determined as a fact that the proofs rebutted the inference of receipt of the notice.

We turn now to consider whether there was a clear and unequivocal error in the finding of the Customs Court that the notice contemplated by section 501, as amended, was given by the collector.

The Customs Court considered the testimony of Mr. George A. Rubinstein, vice president of the appellee, International Importers, Inc., who was appellee's only witness. His duties with the appellant are administrative and he is specifically concerned with all phases of importation. He testified that he is familiar with customs forms and that all shipping records, payment records and any customs matters relating to importations are kept under his direct supervision and direction. A separate file is maintained for each shipment; it is logged chronologically, and contains all of the details of the importation and copies of all customs form thereto relating.

He also described the practice in his office relating to the opening of all mail, including mail containing customs documents. He testified that all mail is opened by his secretary and that, in her absence, all mail is opened by the witness personally. He stated that this practice has been in effect in his office since 1957.

Mr. Rubinstein further testified that Customs Forms 4301, relating to the protests here, were not received, to the best of his knowledge, nor was their receipt indicated by the office records. However, Mr. Rubinstein did admit, on cross-examination, that the mail is initially delivered to a mail clerk who separates the mail for International Importers from that of another company occupying the same premises, and that under these circumstances it is possible for mail to be misdirected.

Mr. Rubinstein testified to irregularities which have occurred in the mailing of notices from the office of the collector. Thus, he stated that Customs Forms 4301 have been received by his office upon various occasions singly or several within one envelope. He also testified concerning one incident where several forms were received in a single envelope and included a Customs Form 4301 dated February 21, 1963 but actually addressed to someone else. The witness testified that he forwarded that notice of appraisement with a letter of transmittal to the intended addressee, International Expediters, Inc. Copies of documents supporting this testimony were received in evidence.

The witness further testified that in May 1961 he received a notice of appraisement in an envelope other than a Government envelope, which had been forwarded to him by International Food Distributors, to whom the form had apparently been mistakenly sent by the collector. The envelope which had contained that notice was received in evidence

and marked Plaintiff's Illustrative Exhibit 2. The witness further testified that when it was discovered that at least two Customs Forms 4301 had not been received, he instituted a procedure in his office whereby after a reasonable amount of time had elapsed after the receipt of a Customs Form 5555, he would have his Custom House broker go to the Custom House to find out whether or not there had been an appraisement on the entries on these forms.

The Customs Court found, and we agree, that appellee's evidence casts reasonable doubt that the notices of appraisement in issue ever were received by the appellee and that these proofs are sufficient to rebut the general inference of fact as to receipt of mailed notices and as such to shift to the Government the burden of going forward with evidence to establish that "notice" was given in compliance with the statute.

We now turn to a consideration of the proofs submitted by the Government to determine whether, as a matter of law, they are sufficient to establish appellant's position that notice was given to the appellee as required by statute.

In summary, the Government's case was directed to establishing its regular mailing procedures. It called Mr. John McDonnell, who was the Deputy Collector in charge of the Liquidating Section of the Entry Liquidation Division in Chicago during March 1960 through February 1961, the time in issue. His responsibilities included supervison of the preparaton, general handling, and mailing of notices of appraisement. In explaining this procedure, he testified that invoices received from the Appraiser which exhibit the term "Advanced" are set aside and a Customs Form 4301 (Notice of Appraisement) is prepared in duplicate for his signature. He further stated that he signs the original, initials the duplicate, and gives both copies back to the files clerk who dates them, separates the originals and duplicates, and mails the originals. After mailing the original, the clerk then stamps the copy "Original mailed," and then dates and initials it.

Mr. McDonnell then identified his initials on Customs Form 4301 in Protest 61/6160 signifying that he had reviewed and signed the original, and stated that the initials of the clerk under the stamp indicating that the original was mailed March 25, 1960, are those of Mr. Nicholas Brady. With regard to Protest 63/6950, Mr. McDonnell's testimony was similar. He identified his own initials and those of the clerk, Mr. John Low. Mr. Low's duties were identical to those of Mr. Brady, and the stamp on the documents indicates that the original was mailed January 2, 1961. On cross-examination, McDonnell testified that he does not have any specific recollection with respect to the two entries involved but stated: "let's say I always brought them back to the man."

The witness testified that there are no specific intructions in his office about placing Form 4301 in envelopes either singly or in multiple numbers. Finally, Mr. McDonnell admitted that he did not see either Brady or Low mail either of the purported notices of appraisement. Mr. McDonnell stated that he was aware that some notices had been misdirected since they were returned from the post office, and that the collector would "then issue another one to the broker involved, because the ones that I can recollect were that in the preparing of the entry the wrong address was shown for the importer himself."

Upon questioning by the court, the witness McDonnell testified that it was an authorized procedure to mail more than one Form 4301 in the same envelope and that, although it had not been brought to his attention that a Form 4301 intended for this plaintiff had been sent to a man in Florida, he was aware that some of the Forms 4301 were going astray.

Appellant's second and third witnesses were Mr. Nicholas Brady and Mr. John Low, respectively, who testified that their initials signified that they had prepared and mailed the notices involved. Both witnesses testified that it was their practice to put such notices in window envelopes. Mr. Brady indicated that on occasion he placed more than one notice in an envelope, but Mr. Low stated this had *never* been his practice.

On cross-examination the witness Brady testified that he did not have any recollection with respect to this particular entry but stated "* * * if I initialed it I did put the original in the mail." The witness also testified that on occasion he put more than one Customs Form 4301 in a single envelope.

On cross-examination the witness Low testified that he also did not have any specific recollection of mailing the Customs Form 4301 pertaining to Protest 63–6950. He further testified that in some cases, upon return from McDonnell the notices of appraisement remained unattended on his desk for some time. He further stated that he always placed only one Form 4301 in an envelope.

The Customs Court made the following observation, with which we agree, concerning the Government's proofs, 57 Cust. Ct. at 137:

* * * Likewise, the evidence proffered by the defendant, if given full credence, sufficiently establishes that notices of appraisement affecting the subject entries were mailed to the plaintiff. * * * And it is to be noted that none of the witnesses from whom the testimony comes possess any independent recollection of the involved transactions. The testimony as to nonreceipt of the involved notices as well as that concerning the mailing of the notices is circumstantial and dependent upon records kept by the witnesses.

The legal effect of the Government's testimony is that it at best proves mailing. Recent decisions of the Customs Court have raised the

requirements for the Government to prove mailing to a level of specificity where the Government must now produce the precise person who mailed the subject notices. *Compass Instrument & Optical Co.* v. *United States*, 47 Cust. Ct. 10, C.D. 2271 (1961) ; *Orlex Dyes & Chemicals Corp.* v. *United States*, supra.; *Clayton Chemical & Packaging Co.* v. *United States*, supra. In these cases the Customs Court followed the principles enunciated in *United States ex rel. Helmecke* v. *Rice, Post Commander*, 281 Fed. 326 (S.D. Tex., 1922), where it was said, id. at 331:

> The better rule, and that which seems to be established by the weight of authority, is that in the absence of direct evidence there must be proof of an invariable custom or usage in an office of depositing mail in a certain receptacle, that the letter in question was deposited in such receptacle, and in addition there must be testimony of the employee, whose duty it was to deposit the mail in the post office, that he either actually deposited that mail in the post office, or that it was his invariable custom to deposit every letter left in the usual receptacle, and that he never failed in carrying out that custom. * * *

However, under the statute here in issue, proof of mailing is not *ipso factor* proof of notice given to the importer by the collector, where, as here, the unrefuted testimony is that no notice was received.

Certainly, presumptions in favor of the regularity of employee's action in mailing the notices may fall when, as here, the proofs establish that irregularities had occurred in mailing procedures. E.g., *Astra Trading Corp.* v. *United States, supra; Nippon Dry Goods Co.* v. *United States*, 11 Cust. Ct. 433, Reap. Dec. 5940 (1943), affirmed, *United States* v. *Nippon Dry Goods Co.*, 13 Cust. Ct. 373, Reap. Dec. 6054 (1944). We note here that appellee has presented strong evidence of irregularities in the collector's procedure. Appellee's evidence shows that errors in mailing do occur and that such errors directly affected appellee on two separate occasions. But for the courtesy of the recipient of one of appellee's misdirected notices, appellee would likewise have faced the same situation in that case.

Considering the legal effect of all of the proofs, we agree with the conclusion of the Customs Court that the Government has failed to prove that the required statutory notive was given to the importer.

We find no legal error in the decision of the Customs Court on the issue of notice to appellee. Its conclusion is further buttressed by the observation that the intended ends of justice, as contemplated by Congress, will be best served by preserving the right of the importer to appeal the increased appraisal and to have its day in court on this issue. See *Alfred Dunhill of London, Inc.* v. *United States*, 22 Cust. Ct. at 212. We agree that the importer should, under the circumstances of this case, have the opportunity to contest the increased appraisement.

As this court commented in *United States* v. *James H. Rhodes & Co.*, 40 CCPA 1, 5, C.A.D. 488 (1952) :

We think the importer was entitled to have "its day in court" on that question. * * *

The observation of the Fifth Circuit Court of Appeals in *The Lace House* v. *United States*, 141 Fed. 869 (5th Cir. 1905), although arising in a different factual context, rightly observes that unless notice of appraisement is given:

* * * It seems impossible to give effect in practice to the statutes intended to allow a review of the appraisement. This right of review is a valuable one, and a construction of the statutes that ignores it cannot be correct. * * *

The judgment of the Customs Court is *affirmed*.