UNITED STATES V. GETZ BROS. & CO. (No. 5293)**

United States Court of Customs and Patent Appeals,
May 16, 1968

*Edwin L. Weisl, Jr.*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, for the United States.

*Glad & Tuttle* (*Edward N. Glad*, of counsel) for appellee.

[Oral argument April 2, 1968 by Mr. Vance and Mr. Glad]

Before WORLEY, Chief Judge, and Judges RICH, SMITH, ALMOND, KIRKPATRICK*

WORLEY, Chief Judge, delivered the opinion of the court:

The Government appeals from the judgment of the United States Customs Court, Third Division,[1] declaring appraisements of certain merchandise to be incomplete and invalid and remanding the "matter"

---

*Senior District Judge, Eastern District of Pennsylvania, sitting by designation.
**C.A.D. 938.
[1] 58 Cust. Ct. 392, C.D. 3000.

to a single judge in accordance with 28 U.S.C. 2636(d) to determine the proper dutiable value.

The merchandise consists of three entries of plywood, entered at the port of Longview, Washington, in May and June of 1961 and appraised July 12, 16, and 31 of 1963, respectively. The importer did not file an appeal for reappraisement within the thirty day period provided by section 501 of the Tariff Act of 1930 (19 USC 1501(a)), but subsequently filed a protest against the "decision, liquidation and assessment of duties" by the Collector of Customs. The Customs Court held that the collector had failed to give notice of the appraisements as required by the same statute. The issue here is whether that ruling is correct.

In pertinent part, section 501 provides:

(a) The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, * * * or (3) in any case, if the consignee, his agent, or his attorney requests such notice in writing before appraisement, setting forth a substantial reason for requesting the notice. The decision of the appraiser including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is * * * * filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. * * *

Also pertinent is section 17.6 of the Customs Regulations (19 C.F.R. § 17.6):

The collector at the headquarters port, or the deputy collector in charge at any other port, shall promptly give notice of appraisement on customs Form 4301 when such notice is required by section 501, Tariff Act of 1930, as amended. The notice shall be prepared in duplicate and the retained copy, with the date of mailing or delivery noted thereon, shall be securely attached to the invoice.

Appellee took testimony of a single witness who testified (in 1965) that she had been employed by J. T. Steeb & Co., customs brokers,[2] as a file clerk for five years; that she was familiar with the office routine with respect to Customs Form 4301;[3] and that such routine involved writing a covering letter to the broker's "account" upon receipt of the form and attaching a copy of the letter to the permanent file kept for each entry. The witness stated that she was familiar with the entries involved in the protest; that there was no covering letter in the files relating to the appraisement; that she had checked the file at one o'clock on the day of the trial; and that the absence of such covering letter indicated that no Form 4301 had been received.

[2] It is unquestioned that J. T. Steeb & Co. was the broker representing the importer for the involved entries and that the collector had been instructed to send notice of appraisement to that broker.

[3] See section 17.6 of the Customs Regulations set out above.

Appellee's witness further testified that incoming mail went directly to the president of the firm; that she did all the filing except when she was on vacation or ill, in which case it was done by whomever was around; that many other persons had access to the files; and that those persons "go to the files" and "in fact pull out papers from the file."

Evidence for the Government includes the three consumption entries and papers accompanying them, together with the testimony of Leland Joseph, Deputy Collector at the port of Longview. He testified that he handled notices of appraisement in the summer of 1963 using either Customs Form 4301 "or the duplicates provided by various customs brokers themselves in [sic] which they would file with their individual entries." Joseph described his procedure in preparing and mailing out notices of appraisement as follows:

* * * The original entry would be accompanied by four appeals for reappraisement.[4] And when I processed the entry I would date-stamp the date of receipt, which would correspond to that of the entry itself. I would send the fourth copy back to the broker who filed it to show we had received it. The other three I would file with the jacket which contained the entry after it had been processed. Upon appraisement I would execute them, stamp my name on them, and the date. And the original and second copy I would forward to the broker or to the importer of record and the third I would attach to the back of the entry itself.

The witness further testified that the notices were always mailed on the same day he stamped them; that he mailed them personally, always having a witness; that the form used for J. T. Steeb & Co. was a mimeographed copy of form 4301 [5] "and it was identical only for the fact that it had been mimeographed to our regular customs form;" that said form requested notice of the appraisement; that once he started making out the notices he would continue without outside disturbances until they were all complete.

The Customs Court recognized that, because of the "presumption of regularity which adheres to the official acts of government officials," one charging lack of notice of an appraisement ordinarily is initially charged with "the burden of establishing through competent testimony its failure to receive a notice of appraisement even though the burden of proof rests on" the Government. However, the court referred to what it considered "certain administrative irregularities such as to deprive the defendant [Government] of the benefit of the presumption of regularity." Referring to section 17.6 of the Customs Regulations, it stated:

Specifically required by this provision is a notation as to the date and manner of delivery. Lacking in the notices of appraisement at bar is a notation as to the manner of delivery. Additionally we cannot properly ascertain whether the dates

---

[4] Refers to notices of appraisement.

[5] The copies included in the three groups of entry papers before us set forth specific requests for notice of appraisement under item (3) in section 501 set forth hereinabove.

noted on the bottom of each of these notices of appraisement, *supra*, are indicative of the date of mailing or of preparation, and thus adding further to their irregularity. Though the defendant's witness testified that he mailed notices of appraisement on the day they were prepared, the proper place for such information insofar as the presumption of regularity and the regulations are concerned is on the retained copy of the notice of appraisement and not in the record. Testimony of this sort cannot be substituted for non-compliance with proper administrative practice. Furthermore, the language set forth in section 17.6 plainly and unequivocally requires the giving of notice of appraisement on forms supplied and prepared by the customs officials. There is nothing in the regulation which would authorize or sanction the practice indulged in in this case, namely, of having the importer or broker prepare the notices in quadruplicate and having the customs officials utilize these forms in discharging their official duties. Such departure from the clear mandate of the regulations deprives the official acts of the customs personnel, with respect to the giving of notice of appraisement in this case, of any claim of regularity. Hence, in view of the aforementioned irregularities in the record before the court, the defendant is put to its burden of proving that notice of appraisement was given. Thus, the issue before the court is whether or not the defendant has met its burden of proof.

The court then ruled that the Government's evidence is too general to meet such burden of proof:

\* \* \* testimony is lacking as to the placing of completed notices of appraisement in a franked and properly addressed envelope. And, as previously indicated herein, the making of notations on the retained copies of the alleged notices of appraisement as required by customs regulations of the claimed mailings and the dates thereof is a requirement that was not complied with. Such deficiency does not lend credence to the proofs of mailing proffered by the defendant.

We cannot agree with the Customs Court that the collector's procedure involved administrative irregularities such as to deprive his acts here of the presumption of regularity to which they are ordinarily entitled. In the first place, we think ▮▮ the presence of the date stamped on the retained copy of each of the notices meets the requirement of section 17.6 of the Customs Regulations that "the date of mailing or delivery [be] noted thereon" in view of the testimony of the person preparing the notices that he "always mailed" the notices on the "same day" he stamped the date thereon. We are also satisfied that the use of mimeographed copies of Form 4301 comply with the requirements of section 17.6. Those copies provide all the information that Form 4301 itself does, and do not prejudice the rights of appellee whose broker, in fact, provided them for the very purpose for which they were used, evidently considering them an expeditious means of making an advance request for notice "in any case" under item (3) of section 501.[6] The acts of the collector here are thus entitled to the

---

[6] In *Orlex Dyes & Chemicals Corp.* v. *United States,* 41 Cust. Ct. 168, 172, C.D. 2036 (1958), the Customs Court stated "that it is possible for a notice of appraisement to constitute sufficient compliance with the statute, even though it is not prepared on the particular form prescribed by the customs regulations." Accepting that statement as correct, we can find no grounds for holding the mimeographed forms used here were improper or irregular. See also *C. S. Emery & Co.* v. *United States,* 11 Cust. Ct. 8, C.D. 782 (1943).

benefit of the presumption that public officials perform their duties in the manner required by law. *Olavarria & Co., Inc.* v. *United States*, 47 CCPA 65, C.A.D. 729 (1960). ■ It being determined that there is a presumption here that a duly mailed notice was received, the question becomes whether that presumption has been rebutted by appellee's proofs. *United States* v. *International Importers, Inc.*, 55 CCPA 43, C.A.D. 932 (1968).

We do not think appellee's proofs are sufficient to rebut that presumption. The only search that the evidence establishes was made in appellee's office was the search which the file clerk made for a covering letter for the entries in her file on the afternoon she testified, more than a year and a half after appellee raised the question of receipt of the notices. Relying solely on so restricted a search presumes that any notices received would necessarily result in covering letters being written, placed in and retained in the proper file.[7] But such presumption is not warranted where all mail was routed directly to the firm's president, no search of the president's quarters was reported, and no evidence was introduced as to the president's practice in handling notices received by him; and no search was reported to indicate that the covering letter or letters sought were not misfiled under a different account or in the possession of one of the many other persons who "in fact pull out papers from the file." It is also significant that the copies of the notices attached to the collector's entry papers were dated on three different dates in a period of nineteen days, decreasing the likelihood that all three were lost before reaching J. T. Steeb & Co. See *Arnold, Schwinn & Co.* v. *United States*, 45 Cust. Ct. 156, C.D. 2217 (1960).

Appellee not having successfully rebutted the presumption that the notices were received by its agent, additional detailed analysis of the proofs of the Government is unnecessary.

Appellee relies particularly on the *International Importers* case in support of the Customs Court judgment. The opinion in that case provides a full analysis of the law applicable to disputes as to compliance with the requirements of notice under section 501. However, we are convinced that the application of the law as expounded there to the present facts compels the conclusion that the Customs Court erred in finding that proper notice was not given here. We remain of the view expressed in *International Importers* that, where reasonable doubt is established that notices of appraisement were received and the burden of proof thus is placed on the Government, "the intended ends of justice, as contemplated by Congress, will be best served by preserving the right of the importer to appeal the increased appraisal and to have its

---

[7] The witness stated that "([o]ne accounts file is kept altogether" and there is no testimony that she searched any other file than that of the J. T. Steeb & Co. account.

day in court." Appellee's difficulty is that its evidence patently fails to rebut the presumption that the notices were received.

The judgment is *reversed*.

KIRKPATRICK, J., took no part in the decision of this case.